## Jane S. Haven v. Chicago Sash, D. & B. Co.

1. EVIDENCE—*Parol Evidence Not Admissible to Show that a Contract is Inoperative.*—Where a contract, being ready for delivery, is handed to the obligee, with the intention, at the time, of passing the present title, there is a delivery, and parol evidence that it was not to become operative until the performance of some condition, is not admissible.

2. GUARANTY—*When Consideration for a Contract is Not Sufficient.*—Where a guaranty is simultaneous with the execution of the contract guaranteed, the consideration for the contract is a sufficient consideration for the guaranty; but if the guaranty is so long subsequent to the execution of the contract that it can not be said to have been a part of the original transaction, the consideration for the contract will not support the guaranty.

3. SAME—*Where a Guarantor is Not Liable.*—An obligor's promise to furnish a bond as security for the performance of a contract which he is seeking to obtain, is not a sufficient consideration to hold him on a bond executed ten days after the execution of the contract.

Covenant, on a bond. Appeal from the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in this court at the October term, 1900. Reversed. Opinion filed July 18, 1901. Rehearing denied, July 31, 1901.

**Statement.**—Appellee was plaintiff and appellant defendant in the trial court. The suit was on a bond executed by the defendant, and conditioned for the performance by Frederick B. Stowell and Lewis D. Beman, partners under the name of F. B. Stowell & Co., of a contract between them and the plaintiff. September 1, 1896, a contract was executed between the United States and Stowell & Co. for the construction by the latter of a postoffice building in the city of Meridian, Mississippi. Stowell & Co. made a contract with the plaintiff, the Chicago Sash, Door and Blind Manufacturing Company, to do part of the work, to secure the performance of which latter contract by Stowell & Co. the bond in suit was executed. The contract and bond are as follows:

### " Article of Agreement.

Article of agreement made and entered into this fourth day of December, eighteen hundred and ninety-six (1896), by and between F. B. Stowell & Co., of the city of Chicago, Cook County, State of Illinois, parties of the first part, and the Chicago Sash, Door and Blind Manufacturing Company, of the city of Chicago, Cook County, State of Illinois, parties of the second part, as follows, to wit: the parties of the second part, their heirs or assigns, for consideration hereinafter mentioned, covenants and agrees to and with the said parties of the first part to furnish all materials required to complete the mill-work for the United States government building at Meridian, Mississippi, consisting of all wood-work, except rough lumber and flooring, and postoffice boxes, outside frames and sash, to be primed according to specifications. The whole entire mill-work to be done strictly in accordance with plans and specifications, satisfactory to supervising architect. Stairs put up complete, all mill-work fixed together, so as to make the least possible work for the carpenters to put in place. All material to be delivered at Meridian, Mississippi. Parties of second part hereby allow fifteen dollars ($15) for delivery from cars to building.

And the said parties of the first part covenant and agree to pay unto the parties of the second part, their heirs or assigns, four thousand nine hundred and fifty dollars ($4,950) in lawful money of the United States, payments to be paid in the following manner: eighty-five per cent (85%)

of the contract price to be paid in installments as the work progresses, the remaining fifteen per cent (15%) to be paid on completion and acceptance of the work. The parties of the second part further agree to furnish such material as the building is ready to receive, and should any delay occur by cause of said material not furnished and executed on time, the said parties of the second part agree to pay the said parties of the first part an amount of money equivalent to the damage incurred by cause of said delays, and said first parties reserve the right to retain such amount of money that they deem proper to cover damages incurred by delays until final adjustment has been made.

In witness whereof the parties hereto have hereunto subscribed their names this fourth day of December, A. D. 1896.

The parties of the first part shall give the parties of the second part notice a reasonable time ahead as to when material should be delivered, and when said parties of second part have delivered said material to railroad company at Chicago there shall be no damages charged owing to neglect of transportation company to deliver promptly.

> F. B. STOWELL & CO.,
> CHICAGO SASH, DOOR & BLIND MFG. CO.
> Per HEPP."

### "BOND.

KNOW ALL MEN BY THESE PRESENTS, That we, Frederick B. Stowell and Lewis D. Beman, comprising the firm of F. B. Stowell & Co., and Jane S. Haven, of the county of Cook and State of Illinois, are held and firmly bound unto the Chicago Sash, Door & Blind Manufacturing Company, a corporation of the State of Illinois, having its principal office in Chicago, Illinois, in the sum of four thousand nine hundred and fifty dollars ($4,950), good and lawful money of the United States of America, to be paid to the said The Chicago Sash, Door & Blind Manufacturing Company, or to its certain attorney, successors or assigns, for which payment, well and truly to be made, we bind ourselves and our heirs, executors and administrators, jointly and severally, firmly by these presents.

Sealed with our seals and dated this fourteenth day of December, in the year of our Lord, one thousand eight hundred and ninety-six.

The condition of this obligation is such that whereas the said Chicago Sash, Door & Blind Manufacturing Company, as sub-contractors, by a contract with said F. B. Stowell & Co., contractors, dated December 4, 1896, agreed

Haven v. Chicago Sash, Door & Blind Co.

to furnish all materials required to complete mill-work for the United States government building at Meridian, Mississippi, consisting of all wood-work, except rough lumber, flooring and postoffice boxes, according to specifications of building and satisfactory to supervising architect of building; material to be delivered at Meridian, Mississippi, and F. B. Stowell & Co. allowed $15 for taking materials from cars to building; said manufacturing company to furnish said materials as fast as building is ready to receive it, but to have notice a reasonable time ahead, and to ship materials from Chicago in time to arrive at Meridian, Mississippi, as required at building, and not to be responsible for failure of transportation company to deliver in time if shipment made in time, all for the sum of four thousand nine hundred and fifty dollars ($4,950), at Chicago, Illinois, as follows: Eighty-five per cent of said sum in installments as work on said building progresses, and remaining fifteen per cent of said amount to be paid at completion and acceptance of building. Now if said F. B. Stowell & Co. shall well and truly perform its said contract with and make said payments to said Chicago Sash, Door & Blind Manufacturing Company, as provided hereinbefore, then this obligation to be void; otherwise to remain in full force and virtue.

FREDERICK B. STOWELL,      [SEAL.]
LEWIS D. BEMAN,      [SEAL.]
      By F. S. STOWELL,      [SEAL.]
JANE S. HAVEN.      [SEAL.]

Sealed and delivered in the presence of
      A. T. GALT,
            804 Opera House."

That plaintiff furnished all the labor and material which by its contract with Stowell & Co. it undertook to furnish, and that such material and labor went into the building are facts not controverted. The plaintiff has never received any part of the contract price, and the same remains wholly due. Plaintiff recovered judgment for $4,950 debt and $4,483 damages.

WM. GARNETT, JR., attorney for appellant.

WM. S. CORBIN, attorney for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

Defendant's counsel pleaded, and contends here, that there

was no consideration for the bond; that the defendant was discharged by reason of the default of plaintiff in not collecting eighty-five per cent of the contract price as the work on the building progressed, and in continuing in the performance of the contract after the default of Stowell & Co. to pay said eighty-five per cent, without notice of such default to the defendant; and that Stowell & Co., pending the performance of the contract, assigned the partnership assets, including the contract in question, and thereby the defendant was discharged.

Section 9 of chapter 98 of the Revised Statutes provides :

"In any action upon a note, bond, bill, or other instrument in writing, for the payment of money or property, or the performance of covenants or conditions, if such instrument was made or entered into without a good and valuable consideration    *    *    *    it shall be lawful for the defendant to plead such want of consideration    *    *    * and if it shall appear that such instrument was made or entered into without a good or valuable consideration *    *    *    the verdict shall be for the defendant."

Plaintiff's counsel contends, but not strenuously, that the section applies only to negotiable instruments, to which contention we think the language of the section a sufficient answer.    It applies, in terms, to a bond for the performance of covenants or conditions, and such a bond is not a negotiable instrument.    The bond in suit is a bond for the performance of conditions, and is within the very words of the section.    The evidence is, and it was admitted by plaintiff's counsel on the trial, that no money was paid either to the defendant or to Stowell & Co. for the execution by the defendant of the bond, and that the only thing that was paid or given for its execution was the work and material named in the bond itself.

Plaintiff's counsel relies solely, as consideration for the bond, on evidence tending to prove that Stowell, about a week before the execution of the contract, agreed with Kuhn, plaintiff's business manager, that he would procure the defendant, who is his (Stowell's) sister, to execute a

bond, as security for the performance of the contract. Kuhn testified that in the latter part of November, about a week before the contract was executed, the first conversation between him and Stowell & Co. in regard to the mill-work occurred; that Stowell came to him and proposed that his firm should do the work, when witness said he had no objection, provided he got good security; that he would not ship work outside of Chicago without security; when Stowell said, " Mr. Kuhn, you can make out a contract, providing that you get eighty-five per cent on the work when it is in the building, and besides I have to give the government good security from New York; that would protect you also;" and witness said he didn't know about that surety bond; they might be good, they might not; that he wanted a party with real estate out of Chicago. And he, Stowell, said, " I have a sister here in Chicago, the widow of Dr. Haven, of the South Side, and she is very wealthy; she has plenty of money and real estate; besides, we have some New York real estate to be settled. There is a part of it coming to me also; she could make it all right if she goes security;" and witness said, " All right, Mr. Stowell, if you can get Mrs. Haven to sign the bond I will furnish you the work." Daniel Hepp, plaintiff's bookkeeper, testified that in the latter part of November, about a week before the execution of the contract, he heard a conversation between Mr. Stowell and Mr. Kuhn; that " Mr. Kuhn wanted somebody with real estate surety in Chicago to guarantee the amount, and Stowell said he had a sister by the name of Mrs. Haven that would sign as soon as she came back to town." Stowell testified that some days after the contract was made, and after plaintiff had done some of the work under it, Kuhn demanded security; that this was the first the witness heard of plaintiff requiring a bond; that Kuhn said he would rather throw up the work and lose what had already been done, than go on with it without an additional bond, and that witness found out he would not go on, and furnished the bond. Thus, there was a discrepancy between the testimony of Kuhn and Hepp, that a bond was required by

the plaintiff about a week before the contract was executed
and the testimony of Stowell that there was no such require-
ment until after " the contract had been made." The jury,
however, were the judges of the credibility of the witnesses
and the evidence was sufficient to sustain a finding by the
jury that Stowell, about a week before the execution of the
contract, agreed to furnish a bond to secure its performance,
with Mrs. Haven as surety.

The date of the contract is December 4, 1896, and, in the
absence of evidence to the contrary, the presumption is that
it was delivered on the day of its date.    Beman, of the firm
of Stowell & Co., testified that he drafted the contract at
Meridian, Mississippi, about the latter part of November or
about the first of December, he thought in November, and
sent it to Mr. Stowell in Chicago, and it appears from the
evidence that train time between Meridian and Chicago is
about twenty-four hours.    The contract was signed in Chi-
cago by Stowell in his firm's name, and by Hepp, plaintiff's
bookkeeper, in plaintiff's name.    It seems from the evidence
to have been signed in duplicate, as Hepp testified that
Stowell brought the contract to plaintiff's office, and Stowell
testified that when the contract was given to him, he for-
warded it to Mr. Beman, at Meridian.    Plaintiff produced
and put in evidence its copy of the contract.    That there
was a delivery of the contract by each party to the other,
is not questioned.    The bond in suit is dated December 14,
1896, and the uncontradicted evidence is that it was executed
on the day of its date.    The question of law arising on these
facts is, whether Stowell's promise to furnish a bond as
security for the performance of the contract which he was
seeking to obtain for his firm, was a sufficient consideration
as to the defendant, Mrs. Haven, for the bond, executed, as
it was, some ten days after the execution of the contract
between the plaintiff and Stowell & Co.

Kuhn's testimony shows conclusively, as we think, that
his understanding of Stowell's agreement was that Stowell
& Co. were to give the bond, with Mrs. Haven as surety,
before, or at least concurrently with, the execution of the

contract.   His testimony is, in substance, that Stowell wanted to figure on the mill-work, to which Kuhn said he had no objection if security should be given, and when Mrs. Haven's name was mentioned, Kuhn said, " All right, Mr. Stowell, if you get Mrs. Haven to sign the bond I will furnish you the work."   But the bond was not executed before or at the time of the execution of the contract.   The work was furnished without any bond.

If the agreement was, as we think, to furnish a bond as a condition precedent to obtaining a contract for the work, then the execution of the contract by plaintiff was a waiver of the condition.   It appears from the testimony of Hepp, witness for plaintiff, who signed plaintiff's name to the contract, that at the time of signing it, nothing was said about security.   He testified that the only conversation he heard on that subject was about the latter part of November.   The promise can not be regarded as part of the consideration for the undertakings of plaintiff, as expressed in the contract of December 5, 1896.   In Ryan v. Cooke, 172 Ill. 302, the defendants to a suit on a contract under seal pleaded that, at the date of the contract, there was an oral agreement between the parties that the written agreement should become binding only on the happening of a certain event mentioned in the plea.   There was an actual unconditional delivery to the plaintiff of the written contract.   The plea was held bad, the court saying :

" Neither a deed, nor any other sealed instrument, can be delivered to the grantee or the obligee himself as an escrow, to take effect upon a condition not appearing on the face of such deed or other instrument.   Such deed or other instrument becomes absolute at law, unless the delivery is made to a stranger.   McCann v. Atherton, 106 Ill. 31; Stevenson v. Crapnell, 114 Id. 19; Weber v. Christen, 121 Id. 91. Undoubtedly, the delivery of a written contract is necessary to give it binding effect, and delivery is a question of intent; and the character of the delivery, whether absolute or conditional, may be established by parol.   Jordan v. Davis, 108 Ill. 336.   But while it may be shown that a deed or contract is not to be delivered until a condition is performed, yet it can not be shown by parol, that actual delivery was

made under an agreement, that a condition should be performed, and that the deed or contract should not be operative unless it was performed.   In the one case, the purpose of the proof is to show want of a legal delivery; but in the other case the effect of the proof is to contradict an instrument absolute on its face, by showing, contrary to its terms, that it is not absolute, but only conditional.   Devlin on Deeds, Secs. 295, 315; Ward v. Lewis, 4 Pick. 518.   In the case at bar, the signing, sealing and delivery of the contract between the parties is established beyond question, and there is no evidence of a conditional delivery of the same. The contract can not be altered by a prior parol agreement. When a deed or other instrument is handed by the grantor to the grantee, or by the obligor to the obligee, simply for the purpose of having the party to whom it is thus handed obtain the signatures of other parties thereto, or obtain the guaranty of some third person thereon, there is no delivery, but a mere manual transfer of possession.   But where the deed or instrument, being ready for delivery, is handed to the grantee or obligee with the intention at the time of passing a present title, there is a delivery, and parol evidence that it was not to become operative until the performance of some condition, is not proper.   Stanley v. White, 160 Ill. 605."   172 Ill. 302.

And the court also say :

" The rule is held to apply to instruments not under seal as well as to instruments under seal," citing cases.   Ib. 310.

In the present case there was an absolute delivery by the plaintiff to Stowell & Co. of the contract of December 4, 1896, a week after the promise relied on by plaintiff was made, and neither in the interval between the time of the promise and the time of the delivery of the contract, was anything said about a bond.   The rule announced in Ryan v. Cooke, *supra*, is too well established to require the citation of other authorities.   But if the alleged promise to procure the execution of a bond by Mrs. Haven could be regarded as part of the consideration for plaintiff's undertakings, expressed in its contract with Stowell & Co., this would not avail the plaintiff, as against Mrs. Haven.

If the bond had been executed at the same time as the principal contract, the consideration for the principal contract, viz., the undertaking of plaintiff to furnish the labor

Haven v. Chicago Sash, Door & Blind Co.

and material to Stowell & Co., would have been a sufficient consideration for the bond. But the bond was not executed until about ten days after the principal contract had been executed, such execution including actual delivery to Stowell & Co. The rule in regard to guaranty is, that if the guaranty is simultaneous with the execution of the contract guaranteed, the consideration for the contract is a consideration for the guaranty; but, if the guaranty is so long subsequent to the execution of the contract guaranteed that it can not be said to have been a part of the original transaction, the consideration for the contract will not support the guaranty. In such case there must be a new and independent consideration. Joslyn v. Collinson, 26 Ill. 61; Judson v. Gookwin, 37 Ib. 286, 298; White v. Weaver, 41 Ib. 409.

In Joslyn v. Collinson, *supra*, the court say:

" When a guaranty is put upon a note at the time of its execution, and so is a part of the original transaction, no new consideration is necessary to support it; but when it is entered into subsequently, it is a new and independent undertaking and must be supported by a new and independent consideration."

In Judson v. Gookwin, *supra*, the court say:

" The case of Joslyn v. Collinson, 26 Ill. 61, was where a stranger, a third party, had guaranteed the note after its execution and delivery to the payees. There proof of a consideration was held necessary, and such is the tenor of all the cases on the subject."

Counsel for appellee quotes the following from 1 Brandt on Sur. & Guar., Sec. 15: " When a promise that a surety or guarantor will become liable is part of the inducement on which the creditor acts in creating the original debt, this is a sufficient consideration to support the contract of the surety or guarantor who subsequently signs; " but this is said of a promise by the guarantor, as is evident from what next follows in the text, viz.: " A told B that if C would lend money, he, A, would be surety for it. B communicated this to C, and on the strength of it C loaned B money and took his note for it, due in one year. Three days after the note became due, A signed it, and he was held bound;" citing Paul v. Stackhouse, 38 Pa. St. 302.

But suppose that the promise to procure a surety was an inducement to the plaintiff to contract with Stowell & Co., as claimed by counsel, or that it was part of the consideration on which the plaintiff contracted, how can this help the plaintiff? It is certainly not a new and independent consideration, such as is by law required to support a contract of suretyship entered into about ten days after the execution and unconditional delivery of the original contract. It is not and can not be claimed that any benefit accrued either to the defendant, Mrs. Haven, or to Stowell & Co. by the execution of the bond by the former. The rights and correlative obligations of Stowell & Co., after the execution of the bond by Mrs. Haven, were precisely the same as before its execution, and after the execution and delivery of the original contract between the plaintiff and Stowell & Co. We are of opinion that the plea of no consideration is sustained by the evidence. This is decisive of the case in this forum, but inasmuch as an appeal may be taken to the Supreme Court, we proceed to discuss briefly other objections of plaintiff's counsel.

The contract provides, "eighty-five per cent of the contract price to be paid in installments as the work progresses." The words in the condition of the bond are "eighty-five per cent of said sum in installments as the work on said building progresses." The suit being on the bond, the latter language must control. The contract is very loosely drafted in respect to the times of payment of the installments of the eighty-five per cent. Ordinarily in such contracts, the provision is for payments to be made on the certificate of the supervising architect, or as the building reaches certain specified stages in being erected. The building having been completed before suit brought, and none of the contract price having been paid, counsel for defendant argues that there must have been a time when there was a first default in the payment of an installment, and contends, as matter of law, that when such default occurred, the plaintiff had the right to refuse to proceed with the contract, unless payment were made, and not having done so, but on

Haven v. Chicago Sash, Door & Blind Co.

the contrary, having proceeded with the performance of the contract without notice to or knowledge of the defendant of the default, she was discharged from further liability. In support of this view, counsel cite Est. of Rapp v. Phoenix Ins. Co., 113 Ill. 390; Delbridge v. Lake, etc., B. & L. Assn., 82 Ill. App. 388, and other cases, which apparently support his contention. But the difficulty is, that there is no evidence as to when the first default occurred, or how fast the work on the building progressed, or at what time in the progress of the erection of the building the payment of an installment of the eighty-five per cent might reasonably have been demanded. On the hypothesis that the defendant was liable on the bond, she would have remained so until the first default, and for the amount due at the time of the first default, and it not appearing when that was, or the amount then due, there was no basis for a verdict on the theory of counsel. We are of opinion that the burden of proving when the first default occurred was on the defendant. The defendant offered in evidence an agreement of date June 30, 1897, between Stowell & Co. and the surety on their bond executed to the United States, and others to whom they were indebted, reciting that Stowell had instituted a suit against his partner, Beman, for dissolution of the partnership, the appointment of a receiver, etc., and agreeing that the contract with the United States should be carried out by Stowell & Co.'s creditors named in the agreement, by means of a committee to be appointed by them, but in the name of Stowell & Co., Stowell and Beman to execute a power of attorney to the committee; and if the government should refuse to recognize the committee, Stowell and Beman, or one of them, to sign all vouchers, etc., a competent person to be placed in charge of the work. A committee of three was named in the agreement. The object of offering the agreement was to show that Stowell & Co. abandoned the work, and to contend that, therefore, the defendant was discharged. The court rejected the agreement but it appears from the evidence that Beman subsequently repudiated the

agreement and remained in charge of the work, and that as late as September 6, 1897, one McBeath was authorized by Stowell & Co. to act for them as general superintendent of the work; also that the United States government refused to recognize any one except Stowell & Co. in connection with the contract. The bill to dissolve the partnership was dismissed, and all material shipped by the plaintiff, in pursuance of its contract with Stowell & Co. was consigned to the latter firm at Meridian, Mississippi, and receipted for there in their names; and it does not appear from the evidence that the plaintiff had any knowledge of the agreement of June 30, 1897. We do not think the defendant was prejudiced by the ruling against the admission in evidence of the agreement.

For the reason that there was no consideration for the execution by the defendant, Mrs. Haven, of the bond in suit, the judgment will be reversed.