H. Schuman et al., Appellees, v. Sam Arsht, Appellant.

Opinion filed July 16, 1928.

PULVERMAN & CANTRELL, for appellant.

NEELEY I. GLENN, for appellees.

MR. PRESIDING JUSTICE BARRY delivered the opinion of the court.

Mrs. Minnie Stein, appellant's sister-in-law, owned and conducted a store at Bloomington, Illinois. She purchased goods from appellees since 1920. She did not pay her bills promptly, would give appellees post-dated checks, and her bills for spring goods would not be paid until she had received her fall shipment. Goods ordered for the fall trade would not be paid until she had received her spring goods

On January 12, 1922, appellant was at the store of appellees in the city of Chicago and asked the office manager how he was getting along with Mrs. Stein's account. Upon being informed that it was unsatisfactory and that he was going to close it out, appellant said: "Don't close it; I will guarantee it to $5,000.00, but don't tell her and don't tell my wife." Thereupon the office manager prepared and appellant signed the following instrument: "In consideration of the extension of credit by H. Schuman & Brother to Mrs. Minnie Stein, doing business as the Emporium at Bloomington, Illinois, I hereby guaranty to H. Schuman & Brother her account in any sum up to $5,000.00. This guarantee is a continual guarantee until revoked by me in writing. Dated at Chicago this 12th day of January, 1922."

Appellees thereafter sold goods to Mrs. Stein, some of which she paid for, but at the time this suit was begun she was indebted to appellees in the sum of $2,297.50. Appellees sued appellant upon the guaranty aforesaid who filed the general issue and certain special pleas. The first and second special pleas were to the effect that appellees accepted from Mrs. Stein, on July 27, 1923, certain promissory notes executed by

her in full payment and satisfaction of their account against her. The third special plea was to the effect that appellees sold certain goods to Mrs. Stein, to the amount of $2,205.25; that said amount was due and owing to appellees on July 27, 1923; that on said date appellees extended the time for the payment of said amount by taking certain notes, the last of which fell due on November 5, 1923; that the extension of the time of payment of the amounts due was without the knowledge or consent of appellant and that by reason thereof appellant was discharged from all liability. To the first and second special pleas appellees replied that the notes were not taken or accepted as payment of the debt. To the third special plea appellees replied double. First, that the notes did not operate to extend the time of payment but were made and accepted as collateral security for the debt. Second, that the said notes were made and accepted as collateral security and that after the making thereof appellant, with full knowledge of the transaction, ratified and acquiesced in the same.

The guaranty was absolute and unqualified and notice of acceptance was not essential to create a liability on the part of appellant. *Frost v. Standard Metal Co.*, 215 Ill. 240. The fact that a creditor takes a note from his debtor and enters the amount thereof as a credit upon his books does not afford a presumption of law that such note was received as an actual payment. The taking of a note, either of the debtor or of a third person, for a pre-exisisting debt, is no payment, unless it be expressly agreed to take the note as payment and to run the risk of its being paid, or unless the creditor parts with the note, or is guilty of laches in not presenting it for payment in due time. *Cheltenham Stone & Gravel Co. v. Gates Iron Works*, 124 Ill. 623. Under the law and the evidence the taking of the notes was not a payment or satisfaction of the account which Mrs. Stein owed to appellees.

We are of the opinion that it cannot be said that the notes were taken as collateral security for the book account. The judgment must be sustained, if at all, upon the ground that appellant ratified the taking of the notes which extended the time of payment. Appellees' office manager testified that on August 27, 1923, just one month after the notes had been given, he told appellant he had taken the note from Mrs Stein and that appellant replied: ''I am glad you have notes, for I will have evidence that I have paid her indebtedness.'' Appellant denied that he had such a conversation and said that he did not know that notes had been taken until three or four months later. The trial was before the court, without a jury. The court saw and heard the witnesses and was in a better position to determine which witness was the more worthy of credit.

If appellant had said to appellees, before the notes were taken, that he would be glad if they would take notes for Mrs. Stein's account so that he would have evidence that he had paid her indebtedness, it would be a consent to the taking of the notes and he would not be relieved from liability. The court evidently believed the testimony of the office manager of appellees to the effect that appellant said he was glad they had taken notes for he would have evidence that he had paid her indebtedness. If that amounts to a ratification the judgment should be affirmed. Where there was a question as to whether the principal had ratified the act of his agent, there was evidence to the effect that when the act of the agent was reported to the principal he said, ''All right'' and, ''That is all right.'' It was held that such language amounted to a ratification. *Tummonds v. Moody,* 51 Hun 637, 3 N. Y. S. 714; *Brown v. Wilson,* 45 S. C. 519, 23 S. E. 630.

We are of the opinion that there is sufficient evidence to show that appellant ratified the taking of the

notes. At the time appellant signed the guaranty he was informed that Mrs. Stein then owed appellees about $1,400 and that appellees were going to cut off her credit and close her account. It is quite apparent that appellant desired to procure an extension for Mrs. Stein on the amount then due as well as future credit for her. There is no evidence in the record as to the terms upon which any of the goods were sold. The only evidence as to Mrs. Stein's account being past due at the time the notes were taken is the following question and answer which appears in the cross-examination of appellees' office manager. "Q. There was exactly $2,005.25 that she owed you on the 27th of July, 1923, and which had been past due for some time? A. Yes."

While it does not appear upon what terms goods were sold to Mrs. Stein at any time from 1920, yet it does appear that her bills for one season were not paid in full until after the shipment for the next season had been made. There is no showing as to when the seasons began or when they ended. The office manager testified that in July, 1923, he told Mrs. Stein she was not taking care of her account satisfactorily; that he wanted to have some specific dates when she would pay; that it would be better to have notes and not post-dated checks; that he explained to her that the notes could be discounted and appellees would have the use of the money and she would not have to pay any sooner than she would if notes were not given. We are of the opinion that it cannot be said that under the circumstances of this case the taking of the notes actually extended the time of payment. The mere taking of a note falling due in the future, as evidence of the account, would not release the guarantor. *Kalmon v. Scarboro,* 11 Ga. App. 547, 75 S. E. 846.

Where there is nothing to show when the principal debt matures, there can be no such extension of time as to discharge the guarantor; in such a case the taking

of the note for the principal debt payable at a specified time in the future is not such an extension of time as will release the guarantor, although he has no notice of the agreement under which the note is taken. 28 C. J. 1003.

The reason a guarantor is released when the creditor extends the time of payment without his knowledge or consent is that if the guarantor should pay the debt he could not recover from the principal before the maturity of the latter's obligation to the creditor. In the case at bar appellant did not execute the guaranty at the request of Mrs. Stein. The evidence shows that he did not want Mrs. Stein to know that he was assuming any responsibility for her debt. Ordinarily a guarantor is not entitled to indemnity for amounts which he has paid under a guaranty entered into by him voluntarily without the request or knowledge of the principal obligor. 28 C. J. 1038. In the case at bar the reason for the rule that the extension of the time for payment will release a guarantor does not exist. Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*