CISSNA PARK STATE BANK, Plaintiff-Appellant, *v.* PAUL E. JOHNSON *et al.*, Defendants-Appellees—(FIRST NATIONAL BANK IN PAXTON, Plaintiff-Appellant, *v.* PAUL E. JOHNSON *et al.*, Defendants-Appellees.)

(Nos. 12315, 12317 cons.;

Fourth District—August 8, 1974.

*Rehearing denied September 12, 1974.*

Mitchem & Tepper, of Urbana (John M. Mitchem and Michael Tepper, of counsel), for appellants.

Martensen & Martensen, of Paxton, for appellees.

Mr. PRESIDING JUSTICE SMITH delivered the opinion of the court:

These cases were consolidated for trial in the Ford County Circuit Court and for oral argument in this court. However, separate appeals were taken, and they are now consolidated for opinion in this court as the parties and the issues are basically the same.

Judgments by confession were taken by the respective banks against the defendants. Defendant Gerald P. Johnson was the son of Paul and Ruby Johnson and operated an implement dealership financed through loans from the First National Bank in Paxton over a period of several years winding up in a note for $50,000 upon which judgment was taken by the First National Bank in Paxton against the three Johnsons. A second note to First National Bank was subsequently sold without recourse to Cissna Park State Bank for $47,000 plus and was originally executed by Paul Johnson alone to cover checks written by Gerald which had been refused payment by First National Bank for want of sufficient funds. Some 30 days after each of these notes had been signed, defendant Ruby E. Johnson was called into the First National Bank by its president and asked to sign both notes. The banker told her, "We have to have your signature on these." Later on April 10, Gerald took bankruptcy. On May 10, First National Bank in Paxton sold the $47,000 note to Cissna Park State Bank without recourse for its face value and before it was due. On August 19, the banks took judgment on their respective notes. On motion, the trial court opened up both judgments and permitted the parties to plead. After the judgments were taken Paul died and Ruby was named executor of his estate. The cases proceeded against her both in her capacity as executor and individually. The trial court reinstated the judgment against Paul's estate and vacated the judgment against Ruby individually.

The record shows that at the time of Ruby's signature she was told nothing about the reason for requesting her signature. No agreement had been made at the time of the original execution of the notes that she

would be asked to sign, and no new consideration passed to her at the time of her signing. The record shows from the testimony of the bank officer that the reason they wanted her signature was that her husband, Paul, then 71 years of age, was in failing health and the First National Bank in Paxton had learned that most if not all of their property was owned in joint tenancy. The trial judge entered judgments against Ruby as executor and a judgment in favor of Ruby individually on each note. The judgments in her favor individually were based on the proposition that there was no consideration for her signature and that there was evidence of lack of good faith on the part of the bank by failing to inform Ruby of either the reasons or necessity for her signature. Under these circumstances, the primary questions for our determination are (1) to determine Ruby's status and determine whether or not consideration for her signature was required before a liability on the note became hers, and (2) was the bank required to disclose to her the reasons for requiring her signature some 30 days after the notes were executed and delivered by all other parties?

When Ruby Johnson affixed her name to these notes, all transactions surrounding the notes at the time of their execution originally had been completed. There was no factual change between the parties, except the addition of her signature. The First National Bank in Paxton had dealt with Gerald Johnson over the years, had financial statements from him and knew that he had written several checks (about 25 in 3-4 months) without sufficient funds. So far as this record shows, the Cissna Park State Bank purchased the second note without knowledge that Ruby Johnson had signed the note after its original execution or of the financial condition of Gerald Johnson. Neither bank, however, claims to be a holder in due course, and we accordingly treat each as a holder for value within the meaning of the Uniform Commercial Code (Ill. Rev. Stat. 1971, ch. 26, par. 1—101 *et seq.*). Section 3—415(1) of the Uniform Commercial Code states, "An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it." Treating Ruby as an accommodation maker, it is clear that the Illinois decisions prior to the effective date of the Commercial Code required no new consideration when the accommodation party was a part of the original execution of the note, but when it was entered into subsequently by the accommodation party, a new and independent undertaking is born and it must be supported by a new and independent consideration. (*Joslyn v. Collinson*, 26 Ill. 62; *Melvin State Bank v. Crowe*, 97 Ill.App.2d 82, 239 N.E.2d 483; *Judson v. Gookwin*, 37 Ill. 286; *Dillman v. Nadelhoffer*, 160 Ill. 121, 43 N.E. 378; *Edwards v. Trustees of Schools*, 30 Ill.App. 528; *Haven v. Chicago Sash, D. & B. Co.*, 96 Ill.App. 92;

*Martin v. Stubbings*, 20 Ill.App. 381.) In *Melvin State Bank*, this court held that a judgment in favor of the plaintiff bank should be reversed for failure of consideration where the defendant's signature was obtained after the note had been executed and delivered and the defendant received no consideration for her signature. *Melvin State Bank* did not discuss the sections of the Code with which we here deal and concerned itself with matters apart from those here involved.

■■■ The resolution of Ruby's status depends upon a proper interpretation of section 3—408, which provides, "Want or failure of consideration is a defense as against any person not having the rights of a holder in due course \* \* \*, except that no consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation *of any kind.*" (Emphasis supplied.) The committee comment on this section indicates, "The 'except' clause is intended to remove the difficulties which have arisen where a note or a draft, or an endorsement of either, is given as payment or as security for a debt already owed by the party giving it, *or by a third person.*" (Emphasis supplied.) (Smith-Hurd Ill. Ann. Stat., ch. 26, § 3—408, at 261.) The provision is intended to change the result of decisions holding that where no extension of time or other concession is given by a creditor, the new obligation fails for lack of legal consideration. Section 3—415 provides: "(2) When the instrument has been taken for value before it is due the accommodation party is liable in the capacity in which he has signed even though the taker knows of the accommodation." It would seem reasonably clear from this section that it applies only to the situation where the accommodation party's signature is on the paper at the time the instrument is taken for value. This would seem to follow from the use of the words "even though the taker knows of the accommodation" because a taker for value could hardly be expected to know of the accommodation status of a party whose name does not appear on the note at the time of its execution and delivery to him. Thus, this section would apply to Cissna but would not by its terms apply to Paxton. However, the committee comments to this section state: "The obligation of the accommodation party is supported by any consideration for which the instrument is taken before it is due. Subsection (2) is intended to change occasional decisions holding that there is no sufficient consideration where an accommodation party signs a note after it is in the hands of a holder who has given value. The party is liable to the holder in such a case even though there is no extension of time or other concession. This is consistent with the provision as to antecedent obligations as consideration (section 3—408)." (Smith-Hurd Ill. Ann. Stat., ch. 26, § 3—415 at 302.) We do have here an antecedent obligation owed by a third party.

Thus, the statute plus the committee comments suggest that the sections were placed in the statute by the legislature for the very purpose of creating a liability on people such as Ruby and to change the result in the cases above cited holding that new consideration is required to hold an accommodation maker who signs after the note is originally executed. So construed, Ruby is liable both as executor and individually.

So far as Cissna is concerned Ruby's liability seems clear. Cissna acquired this note from the First National Bank in Paxton for its face value before due and Ruby's name was on the note as a maker at the time it was taken by Cissna for value.

■■ Turning now to Paxton, section 3—307 of the Code states: "(2) When the signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense." Ruby asked no questions and also asked no questions when her husband indicated she should sign. There is no suggestion that there was any over-reaching by the bank, any misrepresentation or any intimation that the reasons for her signature would not have been freely discussed. The circumstances of her signing provide no defense to her liability on the note.

In *Central Republic Trust Co. v. Evans*, 378 Ill. 58, 37 N.E.2d 745, it was stated that where a note is given to a bank and the money procured on such note is applied to the credit of some other person or is used to make a previous loan legal which is otherwise excessive, such other person is the accommodated party. In that case, it was pointed out that the payee bank could not be the accommodated party; it was the one which advanced the money upon the note of the defendants. The money was deposited to the credit of another bank and the case, likewise, points out that under such circumstances the accommodated party would have been that other bank. It seems beyond question that we have an analogous situation here with the son as the accommodated party.

■■ The fact that no consideration passes to Ruby is beside the point. In 28 Ill. L. & P. *Negotiable Instruments* § 59 (1957) it is stated: "A consideration passing from the original payee to the maker of accommodation paper is not necessary to its validity, it being considered that the maker of such paper by his signature holds himself out to the public to be bound to every person who shall take the paper for value the same as though it were paid to himself. The very nature of accommodation paper presupposes that there was no consideration given for it." In 2 Anderson on the Uniform Commercial Code (2d ed. 1971), § 3—415: 8, it is stated: "An accommodation party cannot claim that there is no consideration for his accommodation as the value received by the principal debtor, the person accommodated, is the consideration for

which the accommodation party lends his credit." Ruby signed as a co-maker. She signed at the bank's request. She turned to her husband and he indicated that she should. She did. What the consequences may have been had she failed to do so become immaterial. Whatever they may have been, they were precluded by her signature.

Accordingly, the judgments in favor of each bank against Ruby as executor of her husband's estate are affirmed. The judgments in her favor against the First National Bank in Paxton and against the Cissna Park State Bank are each reversed and this cause is remanded to the trial court with directions to reinstate those judgments against Ruby individually.

Affirmed in part; reversed in part and remanded with directions.

TRAPP and CRAVEN, JJ., concur.