ALUMINUM COMPANY OF AMERICA, Plaintiff-Appellee, v. HOME CAN MANUFACTURING CORPORATION *et al.*, Defendants (Richard Keefe, Sr., Defendant-Appellant).

First District (2nd Division)   No. 84—2496

Opinion filed June 28, 1985.

Robert C. Griffin, of Chicago (Herbert V. Hedeen, Jr., of counsel), for appellant.

Kimball R. Anderson and James J. Long, both of Winston & Strawn, of Chicago, for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant, Richard A. Keefe, incorrectly named in the pleadings as Richard Keefe, Sr. (hereinafter referred to as defendant), appeals from a judgment of the circuit court finding him secondarily liable on a note executed by codefendant Home Can Manufacturing Corporation (Home Can) and awarding plaintiff, Aluminum Company of America, also known as ALCOA, $16,248.61 plus $8,361.77 in interest, or a total of $24,610.38.[1] Defendant's primary argument on appeal is that he was discharged from liability as a guarantor of the note by the subsequent making of six installment notes without his consent also payable to plaintiff for the same debt, which were executed by Home Can and guaranteed by defendant's son Richard I. Keefe.[2]

Count II of plaintiff's amended complaint, the count upon which the circuit court found defendant liable, alleged the following: (1) on April 21, 1977, and again on May 10, 1977, Home Can ordered certain aluminum stock from plaintiff which was delivered and accepted on December 19, 1977, and June 6, 1978, at a total cost of $18,248.61; (2) on October 9, 1978, defendant as officer and agent of Home Can executed a note for $18,248.61 payable by Home Can to plaintiff on

[1] A default judgment was entered against codefendants Home Can Manufacturing Corporation and Richard I. Keefe, improperly named in the pleadings as Richard Keefe, Jr. They subsequently entered into bankruptcy proceedings and are not parties to this appeal.

[2] In the alternative, defendant contends that he was an accommodation party (Ill. Rev. Stat. 1983, ch. 26, par. 3—415) and was discharged from liability on the note by the execution of the six installment notes. Whether one is an accommodation party is a question of fact for the trier of fact. (*Godfrey State Bank v. Mundy* (1980), 90 Ill. App. 3d 142, 144, 412 N.E.2d 1131.) That issue was not raised in the trial court and therefore is not properly preserved for appellate review.

Defendant also claims that the circuit court erred by excluding evidence concerning whether there was consideration for the six installment notes. We find no ruling in the record by the court to this effect; however, the validity of the installment notes was not in dispute at the trial and, in any event, no new consideration for those notes was required. See Ill. Rev. Stat. 1983, ch. 26, par. 3—408; *Cissna Park State Bank v. Johnson* (1974), 21 Ill. App. 3d 445, 448, 315 N.E.2d 675; *Kitzer v. Kitzer* (1974), 20 Ill. App. 3d 54, 57, 312 N.E.2d 699.

December 11, 1978, with interest at 12% per annum; (3) defendant "acting in his individual capacity, personally endorsed the reverse [side] of the October 9, 1978, Note *** and thereby promised to pay ALCOA the amount of the Note according to its terms and effect in the event that Home Can did not pay the amount of the Note"; (4) Home Can paid only $2,000 of the principal due; and (5) despite presentment and demand for payment defendant had not paid the balance of $16,248.61 plus interest. A copy of the front and reverse side of the note as attached to the complaint are reproduced below.

Also appended to the complaint were copies of the six installment notes. Each of those notes is dated December 12, 1978; they total $18,248.61, bear interest at an annual rate of 12% and mature on the first of every month from April through September 1979. The parties do not dispute that the installment notes were executed on behalf of Home Can by Richard I. Keefe acting as its officer and agent. Nor is it disputed that the reverse side of each of the installment notes has

the words "PAYMENT GUARANTEED" typed on it, ostensibly followed by Richard I. Keefe's signature. The installment notes differ from the October 9, 1978, note in that they include the additional term: "that upon the default in the payment of any one of the [installment] notes the remaining notes shall immediately become due and payable without notice."

In his amended answer to plaintiff's amended complaint defendant: (1) denied that he executed or endorsed any of the notes payable to plaintiff and asserted that his son Richard I. Keefe had actually signed the note dated October 9, 1978, as well as the six installment notes; (2) alleged that the notes were to be paid out of a fire insurance settlement which had not yet been received; and (3) claimed that plaintiff had agreed to accept the installment notes and the first payment of $2,000 in lieu of and as payment for the October 9, 1978, note, as a result of which there was a novation of that note.

At trial, plaintiff's case consisted entirely of evidence that defendant either personally signed the October 9, 1978, note or represented to plaintiff's agents that he had done so, and evidence that plaintiff had not made any agreement to condition payment of that note on Home Can's receipt of fire insurance proceeds.

The only evidence concerning the issue of novation was introduced by the defense during direct examination of defendant. Defendant testified that the six installment notes dated December 12, 1978, were actually delivered by plaintiff's attorney to Richard I. Keefe, and executed by him, in April 1979. Defense counsel inquired of defendant on two occasions as to the purpose of the six installment notes. Defendant answered as follows:

"A the purpose was to rearrange and take care of the first note and replace it with a series of six notes.

\* \* \*

A They replaced the original note, they paid off the original note of $18,000 and made a series of notes out of the original note."

Defendant was then asked whether he had agreed in writing to the extension of the October 9, 1978, note, to which he replied that he had not. Plaintiff did not cross-examine defendant on his testimony concerning the purpose of the installment notes and did not introduce any rebuttal evidence on that issue.

The circuit court found that: defendant had signed and personally guaranteed the October 9, 1978, note; the parties had not agreed to condition payment of that note on Home Can's receipt of the fire insurance settlement; and the conditions supporting a novation had not

been satisfied. The court thereupon entered judgment against defendant and in favor of plaintiff for the balance due on Home Can's account plus accrued interest. In his post-trial motion defendant attempted to raise as a new defense theory that he was an accommodation party under the note of October 9, 1978, and that he was discharged from liability on the note by an agreement between plaintiff and Home Can to extend the time for payment of the note without his consent and without plaintiff reserving its right to proceed against defendant. The trial court denied the post-trial motion, and defendant has appealed.

On appeal defendant has presented three theories in support of his contention that he was discharged from liability on the note of October 9, 1978, by the subsequent making of the six installment notes at plaintiff's behest for the same debt but with a different guarantor.[3] First, defendant claims he was discharged from liability on the note under section 3—802(1) of the Uniform Commercial Code. (Ill. Rev. Stat. 1983, ch. 26, par. 3—802(1) (UCC).) Second, under common law, defendant argues that the installment notes were given in "payment" of the original note, which extinguished that note and discharged its obligors, rather than in "renewal" of the original note which would have merely postponed the time for payment. Third, defendant asserts that he was discharged from liability under section 3—606(1)(a) of the UCC (Ill. Rev. Stat. 1983, ch. 26, par. 3—606(1)(a)) because plaintiff, without his consent, agreed to suspend the right to enforce the note against him.

---

[3]In its brief plaintiff contends that defendant may not raise on appeal the issue whether he was a guarantor on the October 9, 1978, note who was discharged from liability by the subsequent execution of the six installment notes on the grounds that defendant denied signing the notes, did not raise discharge as an affirmative defense and did not mention the issue until closing argument. Plaintiff is correct that defendant denied in his answer that he signed the note. However, defendant also raised novation and resultant discharge of liability as an affirmative defense. Defendant clearly had the right to plead alternative defenses. Ill. Rev. Stat. 1983, ch. 110, par. 2—613.

Moreover, plaintiff sued defendant, and judgment was entered against him, as a party who was liable on the note in the event Home Can, the primary obligor thereon, did not pay it. Plaintiff's argument on appeal, that defendant's status as guarantor was never an issue at trial, places plaintiff in the anomalous position of denying defendant acted in the capacity in which he was sued and found liable. We presume plaintiff did not intend such a result.

We also note that on the last page of its brief, plaintiff suggests for the first time that the trial court would have been justified in concluding that defendant signed the note as a "co-maker." Again, defendant was not sued as a primary obligor, and based upon the evidence, his status, if any, was as indorser or guarantor (Ill. Rev. Stat. 1983, ch. 26, pars. 3—414, 3—416), but not co-maker, of the note.

I

■ The portion of section 3—606(l)(a) of the UCC relied upon by defendant provides, in part:

"(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder

(a) without express reservation of rights *** agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person *** "

This section, however, pertains to an extension of time to pay the obligation granted to the principal debtor. (Ill. Ann. Stat., ch. 26, par. 3—606(l)(a), Illinois Code Comment, at 410 (Smith-Hurd 1963).) As stated above, the question whether plaintiff ever agreed to give Home Can an extension of time to pay the October 9, 1978, note was not an issue at the trial and is not properly before this court on appeal.

II

■ Defendant's reliance on section 3—802(l) of the UCC (Ill. Rev. Stat. 1983, ch. 26, par. 3—802(l)) is also misplaced. Defendant argues in his brief that section 3—802(l) discharges an obligor when the obligee takes a subsequent negotiable instrument drawn or made to his order on which there is no recourse or express reservation against the original obligor. This contention is premised upon the language in section 3—802(l)(a) which by its terms applies only "if a bank is drawer, maker or acceptor of an instrument," which is not the situation in this lawsuit. Section 3—802(l)(b) states that "in any other case [where an instrument has been taken for an underlying obligation] the obligation is suspended pro tanto until the instrument is due." Section 3—802(l)(b) is a codification of the Illinois common law holding that a note given by a debtor for a precedent debt will not be held to extinguish the debt in the absence of an agreement to that effect, but will be considered as conditional payment or collateral security or as an acknowledgment or memorandum of the amount ascertained to be due. (*Keller v. North American Life Insurance Co.* (1921), 301 Ill. 198, 204, 133 N.E.2d 726; See Ill. Ann. Stat., ch. 26, par. 3—802(l)(b), Illinois Code Comment, at 419 (Smith-Hurd 1963).) This provision does not support the proposition for which it is cited by defendant in his brief, but rather merely clarifies that by signing the October 9, 1978, note, Home Can did not extinguish its liability on the underlying obligation based on its account stated with plaintiff.

III

    ■ Illinois case law concerning the effect on the guarantor when the primary debtor gives a new note for an indebtedness evidenced by a prior note has been recently summarized in *Corn Belt Bank v. Lincoln Savings & Loan Association* (1983), 119 Ill. App. 3d 238, 247-48, 456 N.E.2d 150. There the appellate court stated:

> "A general rule has developed that if a new note is taken for the same indebtedness evidenced by a prior note, a guarantor on the prior note is discharged if the new note constitutes a valid agreement supported by consideration extending the time for payment on the old note. (38 C.J.S. *Guaranty* sec. 75a (1943); see *Schuman v. Arsht* (1928), 249 Ill. App. 562; *cf. White v. Walker* (1863), 31 Ill. 422.) However, when the new note is not based on valid consideration flowing to the payee, the extension of time purportedly provided for in the new note does not operate as a valid extension of the time for payment of the debt and does not operate to discharge the guarantor. *Mitchell v. Peterson* (1981), 97 Ill. App. 3d 363, 422 N.E.2d 1026; 38 C.J.S. *Guaranty* sec. 75b (1943); *Lee v. Pioneer State Bank* (1981), 97 Ill. App. 3d 97, 423 N.E.2d 218.
>
> Application of the foregoing rule of discharge depends not only upon whether the new notes are supported by consideration flowing to the payee of the old notes, but also upon the related question of whether the new notes were intended to discharge the old notes or merely to operate as security for those notes. In *Weger v. Robinson Nash Motor Co.* (1930), 340 Ill. 81, 172 N.E. 7, the supreme court held that the question of whether new notes are intended as a satisfaction of a previous note discharging the guarantor of that note is basically a question of fact."

    The elements of novation are a previous valid obligation, a subsequent agreement by all of the parties to the new contract, the extinguishment of the old contract and the validity of the new contract. (*Greenbaum & Browne, Ltd. v. Braun* (1980), 88 Ill. App. 3d 210, 213, 410 N.E.2d 303.) The intention of the parties to extinguish a debt is not presumed. The party asserting discharge or novation has the burden of proving novation by a preponderance of the evidence. *Greenbaum & Browne, Ltd. v. Braun* (1980), 88 Ill. App. 3d 210, 213; *Faith v. Martoccio* (1974), 21 Ill. App. 3d 999, 1004, 316 N.E.2d 164.

    In this case, the parties do not dispute the validity of the note

of October 9, 1978, or of the six installment notes subsequently executed for the same indebtedness. Consideration for the installment notes was imputed, and no additional consideration for those notes was required. (Ill. Rev. Stat. 1983, ch. 26, par. 3—408.) The question is whether the parties agreed to extinguish the original note by executing the installment notes. The only evidence on that issue was defendant's uncontroverted testimony that the installment notes were intended to pay off and replace the original note.

■ In general it is the duty of the trier of fact to assess the credibility of the witnesses and the weight to be given to their testimony. Nonetheless, unimpeached testimony may not be arbitrarily or capriciously rejected. Where the testimony of a witness is neither contradicted, either by positive testimony or by circumstances, nor inherently improbable, and the witness had not been impeached, that testimony may not be disregarded by the trier of fact. *People ex rel. Brown v. Baker* (1981), 88 Ill. 2d 81, 85, 430 N.E.2d 1126.

■ At the close of the trial, the circuit court ruled that the evidence was insufficient to prove a novation of the note; however, defendant's uncontradicted testimony was sufficient to establish an agreement by the parties to replace or discharge the original note. Accordingly, the circuit court's ruling on that affirmative defense and its finding in favor of plaintiff were improper and must be reversed.

For the reasons set forth above the judgment of the circuit court is reversed.

Reversed.

STAMOS, P.J., and PERLIN, J., concur.