In re Roger M. DETRANO, Debtor.

Joseph O. GIAIMO, as Executor
of the estate of Elizabeth
M. Chase, Plaintiff,

v.

Roger M. DETRANO, Defendant.

Bankruptcy No. 897–86001–288.
Adversary No. 897–8591–288.

United States Bankruptcy Court,
E.D. New York.

July 27, 1998.

Michael T. Sucher, Brooklyn, NY, for Plaintiff.

Lester & Fontanetta, P.C. by Roy Lester, Garden City, NY, for Defendant.

## Corrected Memorandum Opinion

STAN BERNSTEIN, Bankruptcy Judge.

### I. Issue

Before the Court are cross-motions for summary judgment with respect to a complaint for a determination of nondischargeability under 11 U.S.C. § 523(a)(4). For the reasons set forth in this opinion, the plaintiff's motion is denied, and the defendant's motion is granted.

### II. Background

The defendant/debtor, Roger M. Detrano (Detrano), filed for relief under chapter 7 on August 8, 1997. Among the debts Detrano sought to discharge was one that had been reduced to judgment following his breach of the terms of a settlement agreement with Joseph O. Giaimo, as executor of the estate of Elizabeth M. Chase (Giaimo or plaintiff).

Detrano had accepted appointment to manage the financial affairs of Elizabeth M. Chase under an Inter Vivos Trust Agreement (Trust) in late 1979. Ms. Chase died in 1989. Giaimo was then named executor of the estate. Between 1989 and March of 1993, Giaimo began three separate actions in the Supreme Court of the State of New York, County of Queens, to recover monies that Detrano had allegedly converted from the Trust. In March of 1993, Detrano filed a petition and accounting in the Surrogate's Court of the State of New York for Franklin County. Giaimo filed objections and sought damages for Detrano's fraud and conversion. Soon after, all the actions were consolidated before the Surrogate's Court.

On May 24, 1995, Giaimo and Detrano settled the consolidated action. On November 28, 1995, the Surrogate's Court, by Judge Robert G. Main, signed an order approving the agreement. Under the agreement, Detrano promised to pay Giaimo $480,000 with interest accruing at 5% per annum, with an initial $50,000 payment and the balance in periodic payments. Detrano further promised that, within thirty days (i) he would convey a mortgage on his residence in the amount of $430,000 to Giaimo as security for the payments under the agreement; (ii) deliver to Giaimo a term life insurance policy on his own life in the same amount; and (iii) deliver to Giaimo a confession of judgment for entry upon Detrano's default.

The agreement further provided that (i) it was in full settlement of any claims of the Chase estate; (ii) upon entry of the settle-

ment order, all parties would be deemed to have withdrawn any objections to the accounting filed by Detrano and to have consented to the entry of an order discharging him as trustee; (iii) all parties would execute and exchange general releases with respect to all matters embraced in the accounting and other related pending matters in the Surrogate's Court, except for Detrano's obligations under the agreement; and (iv) Detrano's debts were "nondischargeable."

Detrano defaulted after paying only $25,-000. An action was commenced in March of 1996 to enforce the settlement agreement in the Supreme Court of the State of New York, County of Queens. A money judgment was entered against Detrano on August 22, 1996 for $459,039.15 and for specific performance of his non-monetary obligations set forth in the settlement agreement.

On August 8, 1997, Detrano filed for relief under chapter 7. On November 6, 1997, the plaintiff filed a complaint with this Court for a determination that the judgment amount debt is nondischargeable under 11 U.S.C. § 523(a)(4).[1] The defendant's answer relies upon the provisions of the settlement agreement and the judgment as speaking for themselves. This is hardly a self-defining or particularly illuminating defense. The defendant further states that any shortfall in the trust was not caused by any malfeasance on his part.

### III. Cross–Motions for Summary Judgment

The plaintiff moved for summary judgment on March 3, 1998.[2] The defendant replied and cross-moved for summary judgment. The Court heard oral argument on April 8, 1998. The parties were allowed to submit additional briefs. The plaintiff maintains that the Supreme Court judgment is entitled to collateral estoppel. The defendant counters that there were no specific findings by the Supreme Court that would support collateral estoppel, that the defendant was released from his prior allegedly tortious mis-

conduct under the settlement agreement, and all that remains is essentially a liquidated and dischargeable judgment based upon the agreement.

### IV. Discussion

#### A. Plaintiff's Motion for Summary Judgment—Collateral Estoppel

Collateral estoppel applies to Section 523 actions. *See Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). In applying this doctrine, the state and federal fact issues must be substantially "identical." *Rupert v. Krautheimer (In re Krautheimer),* 210 B.R. 37, 49 (Bankr. S.D.N.Y.1997). The purpose of collateral estoppel is to prevent parties from relitigating matters that have already been determined by a court of competent jurisdiction. *Id. citing Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 23, 99 S.Ct. 645, 654 n. 23, 58 L.Ed.2d 552 (1979). Under the "full faith and credit" statute, 28 U.S.C. 1738, courts must "refer to the preclusion law of the State in which the judgment was rendered" to determine whether to apply the doctrine. *Id. citing Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274, *reh'g denied,* 471 U.S. 1062, 105 S.Ct. 2127, 85 L.Ed.2d 491 (1985). In New York, there are two elements to the doctrine: (a)(i) issues are identical and (ii) were necessarily decided; and (b) the party against whom the doctrine is being enforced had a full and fair opportunity to litigate the issues.

The elements of fraud, conversion, embezzlement and defalcation are "substantially identical" under both Section 523 and New York case law. Although Detrano fully participated in the original consolidated state litigation and participated in the second state court litigation up until the point of filing a response to Giaimo's motion for summary judgment, the issues were never decided on

---

**1.** Section 523(a)(4) provides that "[a] discharge under section 727 ... does not discharge an individual debtor form any debt ... for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. § 523(a)(4).

**2.** See *Levin v. Analysis & Technology, Inc.,* 960 F.2d 314 (2d Cir.1992), for the well-known criteria for a summary judgment motion.

their substantive merits. This simply reflects that the state court never made any findings of fact or law to which collateral estoppel could apply. For this reason, the plaintiff's motion for summary judgment is denied.

### B. Defendant's Cross–Motion for Summary Judgment—Release

■ Detrano cites a number of circuit court decisions that stand for the proposition that once a case has been settled and a release signed by the parties a "novation" has occurred. *See Matter of West,* 22 F.3d 775 (7th Cir.1994); *Key Bar Investments, Inc. v.. Fischer (In re Fischer),* 116 F.3d 388 (9th Cir.1997); *contra, U.S. v. Spicer,* 57 F.3d 1152 (D.C.Cir.1995). Under these cases, once a "novation" has occurred, the debt that arises under the settlement agreement is a simple dischargeable contract debt in the ensuing bankruptcy case. It is irrelevant that the settlement was of claims, which if litigated to judgment on the merits in favor of the plaintiff, could have been excepted from the scope of the debtor's discharge.

According to *Spicer,* it is contrary to the fundamental principles of bankruptcy law for any claim that is initially predicated upon intentional torts misconduct to be discharged. The ultimate rationale is that a discharge of prepetition liabilities should only be available to an "honest and improvident debtor." If that debtor, in fact, had engaged in intentional torts, that debtor should not be entitled to discharge claims based upon those torts. A settlement of those claims should not initiate a reaction in "alchemy," transforming tort claims into contract claims. *See Spicer,* 57 F.3d at 1155.

This Court is not at all persuaded that *Spicer*'s medieval imagery of alchemy is particularly helpful in determining this issue. Indeed, the line of decisions reflected in *Spicer* begs the fundamental question and, worse, undermines the entire structure of incentives for settling tort claims in state court. What *Spicer* ignores is that there is usually a tremendous distance between pleading and proving intentional torts. Until the allegations are proven by a clear preponderance of the evidence (or admitted to),

there is no basis for presuming the defendant is an intentional tortfeasor for purposes of either state law or federal bankruptcy law. A settlement in which both parties are represented by competent counsel, and which is approved by a court of competent jurisdiction, should render those allegations entirely moot—not because the defendant is or is not a bad man, but because the parties have mutually agreed that issue will not be litigated. There is absolutely nothing about federal bankruptcy law that should disturb that state law outcome.

### C. The Waiver

■ The parties, apparently contemplating that Detrano might file for bankruptcy relief, met that contingency by providing that the obligations arising under the settlement agreement would be nondischargeable in any subsequent bankruptcy case. Unfortunately for the plaintiff, that concession by the debtor was meaningless. We strongly suspect that Detrano agreed to this concession, knowing quite well that the provision was unenforceable, but if that is what the plaintiff insisted upon as one of the conditions for a structured settlement and a full release of all liabilities other than obligation to pay the liquidated claim, then there was no practical reason for Detrano not to make that concession.

This nondischargeability provision is inconsistent with the other provision on releases. If there were an irreconcilable conflict, then the agreement would be unenforceable, and the plaintiff could proceed with its pending complaint. As a matter of superseding federal bankruptcy policy, however, a prepetition waiver of a discharge of a particular debt or of all debts is against public policy and unenforceable. *See Klingman v. Levinson,* 831 F.2d 1292 (7th Cir.1987); *Alsan Corp. v. DiPierro (In re DiPierro),* 69 B.R. 279 (Bankr.W.D.Pa.1987). That means that the nondischargeability element in the agreement is canceled, and the release element remains in effect. The rationale for this approach is best understood by revisiting the parties at the settlement table, and examining their respective options. Yes, this is sort of an exercise in nonquantitative game theo-

ry, but that is exactly what sophisticated commercial and bankruptcy lawyers do all day long.

 It has long been the settled law in this Circuit that waivers of bankruptcy remedies are generally against public policy and not enforceable. *See Fallick v. Kehr,* 369 F.2d 899 (2d Cir.1966). Giaimo (or his counsel) should have known this, and if Giaimo or his counsel ignored that, he acted at his peril. There is only one reliable way to achieve the result Giaimo sought in a formal settlement agreement: (i) the debtor has to admit to the specific allegations of the intentional torts, and (ii) the debtor has to acknowledge that any release of liability is conditional, and not absolute—namely, that the release is conditioned upon the debtor's not filing for bankruptcy relief during the period of the settlement agreement.

In *Klingman,* the Seventh Circuit set out very clearly the kind of careful drafting that is required for persons like Giaimo to achieve their objective in anticipation of the defendant's later filing for bankruptcy relief. The consent judgment in *Klingman* provided

[1] [t]hat Defendant, in disregard of his fiduciary duties and obligations as Trustee, has failed to retain and conserve said trust corpus and income therefrom, but rather, in violation of an disregard of his fiduciary duties and obligations as Trustee, has, through his misappropriation and defalcation, allowed or caused the dissipation and loss of the said trust corpus and income therefrom; and

[2] [t]hat malice is the gist of this action, ... and that in any subsequent proceeding all of the allegations of the Complaint and findings of this Court may be taken as true and correct without further proof.

*Klingman,* 831 F.2d at 1293. Any agreement short of that exacting standard should not be enforceable on nondischargeability grounds by the settling plaintiff against the defendant in the latter's bankruptcy case.

This is even more proper an outcome under the facts in this case. Here we have a settlement in which the debtor is expressly released of all claims. This settlement is then approved by the Surrogate's Court.

Next Detrano breaches the settlement agreement and is sued in Supreme Court to enforce the liability under that agreement. The plaintiff then takes a judgment, issued by the State Supreme Court on the settlement agreement as a contract action. This means that Giaimo twice had an opportunity to press his intentional tort claims, but declined to do so, and twice invited a court to issue an order or judgment with respect to this matter. Giaimo is now asking this Court in round three to look past that judgment of contractual liability, past the Surrogate's Court order approving the settlement, and then finally past the settlement agreement into order to determine the substantive issues of liability on intentional tort issues, and then determine the effect that liability should have in the debtor's bankruptcy case. This Court will not permit Giaimo to take a third bite at the same apple. This may seem a harsh result, if Detrano is perceived to be a bad man—nevertheless, Giaimo released Detrano from those tortious claims, and so Giaimo must be held to his state-court approved bargain.

In state court, Giaimo would not be able to assert any claims of fraud or defalcation arising from the trust agreement because he gave a full release. Only this Court can determine issues of nondischargeability, but there is nothing left at state law other than a contractual debt, and this Court will not give Giaimo greater rights than those he had under state law. This Court must respect state law entitlements unless there is a clear Congressional policy to the contrary. Giaimo was under no obligation to settle this matter and release Detrano from any further liability.

## V. Disposition

For the above reasons the plaintiff's motion is denied and the defendant's cross-motion for summary judgment is granted. The defendant shall submit an order consistent with this opinion.

So Ordered.