### In re James R. FULTZ, Debtor.

**Federal Sign, a division of Federal Signal Corporation, Plaintiff,**

v.

**James R. Fultz, Defendant.**

**Bankruptcy No. 98 B 00187.**
**Adversary No. 98 A 00777.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 30, 1999.

Anthony C. Valilulis, Scott N. Schreiber, Anne L. Sarkinen, Much, Shelist Freed Denenberg Ament Bell & Rubenstein, P.C., Chicago, IL, for Plaintiff.

Robert R. Benjamin, Beverly A. Berneman, Benjamin & Berneman, Ltd., Chicago, IL, for Defendant.

David R. Brown, Roselle, IL, trustee.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the complaint of Federal Sign, a division of Federal Signal Corporation ("Federal Sign"), to determine dischargeability of a debt under § 523(a)(2)(a) of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* The Debtor, James R. Fultz ("Fultz"), has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), incorporated by reference in Federal Rule of Bankruptcy Procedure 7012. The Plaintiff has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(a), incorporated by reference in Federal Rule of Bankruptcy Procedure 7056. For the reasons set forth herein, the Court hereby grants the Debtor's Motion for Judgment on the Pleadings. Accordingly, the Court denies the Plaintiff's Motion for Summary Judgment.

## I. JURISDICTION AND PROCEDURE

The Court has the power to entertain this matter pursuant to 28 U.S.C. § 1334 and Local General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## II. FACTS AND BACKGROUND

This matter is the latest in a series of lawsuits between the parties, arising out of Fultz's former employment with Federal Sign. Fultz admits he was a Federal Sign employee from February 1987 until June 1992. (Answer ¶ 5; Plaintiff's 12(M) Statement ¶ 3).

Sometime in the fall of 1990, Fultz expressed an interest in earning a Master's of Business Administration ("MBA") degree from Northwestern University ("Northwestern"). Federal Sign agreed to sponsor him. (Answer ¶ 8; Plaintiff's 12(M) Statement, Exhibit D). In a letter agreement (the "Letter Agreement") addressed to Fultz, dated November 15, 1990 (Complaint Group Exhibit B; Plaintiff's 12(M) Statement, Exhibit D), Federal Sign set forth the terms of its agreement with Fultz. The Letter Agreement provides in pertinent part:

> Federal Sign will grant you an educational loan payable jointly to James Fultz and Northwestern University upon signing a promissory note ... provided you meet certain conditions. The

amount of the loan shall not exceed $17,-400 (principal) plus interest as evidenced by such Promissory Note. The granting of said loan requires that: You are enrolled in, attending and receiving passing grades in courses contributing towards your MBA from Northwestern University, you continue to be an employee of Federal Sign

. . . .

[Y]ou should be aware that you are considered an "at will" employee of Federal Sign. This means your employment may be terminated at any time with or without cause by Federal Sign or yourself. If you are still employed by Federal Sign at the completion of your first year classes which are required for graduation with a Masters (sic) of Business Administration from Northwestern University, Federal Sign will forgive one-half of the principal sum and interest on the promissory note. Assuming that you are still employed by Federal Sign on January 15, 1993, Federal Sign will forgive one-half of the remaining principal sum and interest outstanding on the promissory note. On January 15, 1994, the principal sum and interest outstanding will be forgiven if you are still employed by Federal Sign.

Should you terminate your employment by resignation prior to full forgiveness of the educational loan evidenced by your Promissory Note to Federal Sign, you will be responsible for payment of the principal amount outstanding plus interest accrued thereon within a reasonable period of time (not exceed one year) following your termination of employment. If your employment is terminated without cause, where "cause" shall be defined and given the same meaning as "misconduct" as defined in § 602 of the Illinois Unemployment Insurance Act ... then you would be immediately released from such Promissory Note.

The promissory note (the "Note") provided in pertinent part in subparagraph "a" that Fultz would default on the loan by

"making false representations for purposes of obtaining [the] loan" (*See* Complaint, Group Exhibit B Bates Stamp No. 000003 & 000004; Plaintiff's 12(M) Statement, Exhibit D) or in subparagraph "f" by "making any representation[s] that are false in any material respect...." *Id.*

Federal Sign paid Fultz's first year tuition in the amount of $17,400 (Answer ¶ 9; Plaintiff's 12(M) Statement ¶ 6, Exhibit A ¶ 9, Exhibit D) and Fultz commenced his studies in January 1991. However, the parties did not actually execute the Letter Agreement and the Note until June 4, 1992. (Answer ¶ 14; Plaintiff's 12(M) Statement ¶ 8, Exhibit D).

Fultz withdrew from the MBA program in December 1991. (Answer ¶ 11; Plaintiff's 12(M) Statement, Exhibit A ¶ 11). He had passed several courses, but received one grade of "unsatisfactory" and two "incompletes." (Complaint, Exhibit A p. 8; Plaintiff's 12(M) Statement, Exhibit B p. 8–9). He planned to audit a first-year class in the spring of 1992, but failed to complete it. (Answer ¶ 12; Plaintiff's 12(M) Statement, Exhibit A ¶ 12).

At the June 4, 1992 meeting held to execute the Letter Agreement and the Note, Fultz submitted to Federal Sign an Addendum to Promissory Note (the "Addendum") (Answer ¶ 14; Plaintiff's 12(M) Statement ¶ 11, Exhibit D). The Addendum provided that Fultz had successfully completed his first year in the MBA program. (Complaint, Group Exhibit B, Bates Stamp No. 000005; Plaintiff's 12(M) Statement ¶ 10, Exhibit D). The Addendum further provided that Federal Sign thus forgave one half of the loan. *Id.*

Federal Sign executed the Addendum on June 4, 1992. Federal Sign terminated Fultz's employment on June 26, 1992. (Complaint Exhibit A p. 4; Plaintiff's 12(M) Statement, Exhibit B p. 4).

In 1993, Federal Sign filed a complaint against Fultz in the Circuit Court of Cook County, Illinois ("Circuit Court") (Answer ¶ 7; Plaintiff's 12(M) Statement, Exhibit A

¶ 7), seeking reimbursement for the entire educational loan. (Complaint, Exhibit A p. 1; Plaintiff's 12(M) Statement, Exhibit B p. 1). After the Circuit Court ruled in favor of Fultz, Federal Sign appealed to the Appellate Court of Illinois, First District ("Appellate Court"), which ruled in favor of Federal Sign on June 28, 1996. (Answer ¶ 7; Plaintiff's 12(M) Statement, Exhibit A ¶ 7, Exhibit B). The Appellate Court found that "the evidence presented overwhelmingly shows that, in June 1992, Fultz was not entitled to any forgiveness of one-half of his indebtedness to Federal Sign because he had not successfully completed the first year of the MBA program." (Complaint, Exhibit A p. 15; Plaintiff's 12(M) Statement, Exhibit B p. 15). The Appellate Court further found that Fultz misrepresented that he had successfully completed the first year of his MBA program (Complaint, Exhibit A pp. 15 & 17; Plaintiff's 12(M) Statement, Exhibit B pp. 15 & 17) and that by making such misrepresentations, Fultz "clearly breached the default provisions of the loan agreement." (Complaint, Exhibit A p. 15; Plaintiff's 12(M) Statement, Exhibit B p. 15). Thus, the Appellate Court decided that the full amount of the loan became due and payable on June 4, 1992. (Complaint, Exhibit A p. 6; Plaintiff's 12(M) Statement, Exhibit B p. 6). The Appellate Court remanded the matter to the Circuit Court with directions to enter judgment in favor of Federal Sign. (Complaint, Exhibit A p. 17; Plaintiff's 12(M) Statement, Exhibit B p. 17).

On April 23, 1997, the Circuit Court entered judgment in favor of Federal Sign and against Fultz in the amount of $22,-395.86. (Answer ¶ 22; Plaintiff's 12(M) Statement, Exhibit A ¶ 22). On June 23, 1997, Federal Sign filed a motion in Circuit Court seeking fees and costs in the amount of $56,945. (Answer ¶ 23; Plaintiff's 12(M) Statement, Exhibit A ¶ 23).

In the meanwhile, Fultz sued Federal Sign in the United States District Court for the Northern District of Illinois, alleging that Federal Sign discriminated against him. He appealed this case to the Seventh Circuit Court of Appeals. (Debtor's Motion for Judgment on the Pleadings and Memorandum in Support Thereof p. 2).

On August 26, 1997, Fultz and Federal Sign executed a Settlement Agreement and Release ("Settlement Agreement") (Debtor's Motion for Judgment on the Pleadings, Exhibit A). Both parties denied any wrongdoing (Debtor's Motion for Judgment on the Pleadings, Exhibit A p. 1) and the Settlement Agreement provides that it "shall not be construed as an admission by any party of any wrongdoing or liability in connection with the Lawsuits or any other aspect of their relationship." (Debtor's Motion for Judgment on the Pleadings, Exhibit A p. 2 ¶ 2). Among other terms of the Settlement Agreement, Fultz agreed to pay $15,500 to Federal Sign at execution and to make monthly payments of $1,000 each to Federal Sign for a ten-month period beginning October 1, 1997. (Debtor's Motion for Judgment on the Pleadings, Exhibit A p. 2 ¶ 6). Federal Sign agreed to give Fultz a Satisfaction of Judgment if and when Fultz completed making the required payments. (Debtor's Motion for Judgment on the Pleadings, Exhibit A p. 4 ¶ 7). If Fultz failed to make a payment when due and within fourteen days after written notice from Federal Sign, he would be in default under the Settlement Agreement. (Debtor's Motion for Judgment on the Pleadings, Exhibit A p. 4 ¶ 9).

Paragraph 8 of the Settlement Agreement provides:

No interest is to be charged on any aforementioned payments, unless and until there is a Default, as hereinafter defined, by Fultz. In the event of a Default, the entire amount of the Federal's judgment procured on April 23, 1997 plus reasonable attorney's fees under lawsuit No. 93 CH 1397 and this Agreement, less all payments made pursuant to this Settlement Agreement, shall be

immediately due. Interest at the rate of Ten (10%) per annum on the unpaid balance of money in Paragraph Six (6) above shall begin to accrue upon the occurrence of a Default.

(Debtor's Motion for Judgment on the Pleadings, Exhibit A p. 4 ¶ 8).

Paragraph 10 of the Settlement Agreement provides:

In additional (sic) to the above, upon execution of this Settlement Agreement and Release, Federal for and in consideration of good and valuable considerations, including the settlement, compromise and adjournment of all claims, disputes and controversies arising out of the Lawsuits, has remised, released and forever discharged and, by these Presents, does ... remise, release and forever discharge Fultz ... of and from all manner of actions, causes of action, suits, debts, sums of money accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims, and demands, whatsoever, in law or in equity, and particularly, without limiting the generality of the foregoing, all claims, disputes and controversies out of the aforesaid matters, including but not limited to those related to the Lawsuits, and which it now has against him or has ever had ... on or at any time prior to the date of these Presents. Federal further states that it has read and understood that this is a General Release, and it intends to be legally bound by the same.

(Debtor's Motion for Judgment on the Pleadings, Exhibit A pp. 4–5 ¶ 10). Para-

graph 11 of the Settlement Agreement provides a general release of Federal Sign from Fultz's claims against it. (*Id.* at p. 5 ¶ 11). Paragraph 17 provides in pertinent part that "[t]his Agreement constitutes the entire agreement between Federal and Fultz, and its terms are contractual and not a mere recital." (Debtor's Motion for Judgment on the Pleadings, Exhibit A ¶ 17).

Fultz admitted that he defaulted on the terms of the Settlement Agreement. (Answer ¶ 26; Plaintiff's 12(M) Statement ¶ 22, Exhibit A ¶ 26).

On January 5, 1998, Fultz filed a petition for relief under Chapter 7 of the Bankruptcy Code. (Debtor's Motion for Judgment on the Pleadings p. 2). Federal Sign then filed its Complaint to Determine Dischargeability of Debt. Attached as exhibits to the Complaint were a copy of the Appellate Court opinion (Complaint, Exhibit A) and a group exhibit comprised of a copy of the Letter Agreement, the Note, and the Addendum (Complaint, Group Exhibit B). Federal Sign paraphrased and alleged its interpretation of the language of the Settlement Agreement in Paragraphs 24–27 of its Complaint.[1] Federal Sign did not attach a copy of the Settlement Agreement to the Complaint.

Fultz timely filed his Answer and Affirmative Defense to Complaint to Determine Dischargeability of Debt. In his Affirmative Defense, Fultz claimed that pursuant to Paragraph 10 of the Settlement Agreement, Federal Sign released him from the debt for his alleged misrepresentations. The Settlement Agreement was not attached as an exhibit to the Affirmative

---

1. In its Complaint, Federal Sign alleges in pertinent part:

    24. On or about August 26, 1997, Fultz and Federal Sign entered into a conditional Settlement Agreement. Under the terms of the Settlement Agreement, Fultz was conditionally released from the State Court judgment pending payment in full under the terms of the Settlement Agreement.

    25. The Settlement Agreement expressly stated that if Fultz were to default on the Settlement Agreement, Federal could pursue its original judgment, plus attorneys (sic) fees and interest.
    26. Fultz defaulted on the terms of the Settlement Agreement.
    27. Accordingly, Fultz is indebted to Federal Sign for the original judgment, attorneys (sic) fees, costs and interest. This amount exceeds $84,000.

Defense. Although in Paragraph 1 of the Affirmative Defense he made reference to an "Exhibit A," Fultz did not attach any exhibits to the Answer and Affirmative Defense.

Fultz has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), incorporated by reference in Federal Rule of Bankruptcy Procedure 7012. Fultz argues that Federal Sign released him from any debt for alleged fraud when it executed the Settlement Agreement. (Debtor's Motion for Judgment on the Pleadings pp. 3–4). He further argues that the debt he now owes to Federal Sign is a contract debt based solely upon the Settlement Agreement and is thus dischargeable in bankruptcy. (Debtor's Motion for Judgment on the Pleadings pp. 5–6). He attached a complete copy of the Settlement Agreement to the Motion as Exhibit A.

Federal Sign responds by arguing that Paragraph 8 of the Settlement Agreement provides that its release of Fultz was merely conditional upon no default occurring in the payments to be made thereunder by Fultz. (Plaintiff's Response to Defendant's Motion for Judgment on the Pleadings pp. 2–4). Federal Sign further argues that the Settlement Agreement did not create a novation, substituting the old tortious debt for a new contractual debt.

Federal Sign moves for summary judgment, arguing that the Appellate Court opinion and Circuit Court judgment collaterally estop Fultz from contending that the debt he owes to Federal Sign is dischargeable in bankruptcy.

## III. APPLICABLE STANDARDS

### A. The Standard for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c), which is incorporated by reference in Federal Rule of Bankruptcy Procedure 7012, provides as follows:

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(c). Rule 12(c) permits a party to move for judgment after the parties have filed the complaint and answer. *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir.1998). A motion for judgment on the pleadings is determined by the same standard applied to a motion to dismiss for failure to state a claim. *U.S. v. Wood*, 925 F.2d 1580, 1581 (7th Cir.1991). When deciding a motion for judgment on the pleadings, the Court may consider only the contents of the pleadings. *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir.1993); *Union Carbide Corp. v. Viskase Corp. (In re Envirodyne Industries, Inc.)*, 183 B.R. 812, 817 (Bankr.N.D.Ill.1995). However, the Court may consider documents incorporated by reference in the pleadings. *Wood*, 925 F.2d at 1582. The Court may also take judicial notice of matters of public record. *Id.*

Federal Rule of Civil Procedure, which defines the term "pleadings" and is made applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 7007(a), provides:

There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer.

Fed.R.Civ.P. 7. The pleadings include the complaint, the answer, and any written instruments attached as exhibits. *Northern Indiana Gun,* 163 F.3d at 452.

Pursuant to Rule 12(c), a motion for judgment on the pleadings is properly granted if the undisputed facts appearing in the pleadings, supplemented by any facts of which the Court should take proper judicial notice, clearly entitle the moving party to judgment as a matter of law. *National Fidelity Life Ins. Co. v. Karaganis,* 811 F.2d 357, 358 (7th Cir.1987); *Flora v. Home Federal Sav. & Loan Ass'n.,* 685 F.2d 209, 211 (7th Cir.1982); *In re Amica, Inc.,* 130 B.R. 792, 795 (Bankr. N.D.Ill.1991). A motion for judgment on the pleadings is only appropriate when there are no material allegations of fact in dispute and only questions of law remain. *Flora,* 685 F.2d at 211; *National Fidelity,* 811 F.2d at 358; *Cagan v. Intervest Midwest Real Estate Corp.,* 774 F.Supp. 1089, 1091 n. 2 (N.D.Ill.1991). A moving party must clearly establish that no material issue of fact exists and that judgment on the pleadings is warranted by law. *Flora,* 685 F.2d at 211; *National Fidelity Life,* 811 F.2d at 358; *A.D.E., Inc. v. Louis Joliet Bank & Trust Co.,* 742 F.2d 395, 396 (7th Cir.1984) (judgment on the pleadings is appropriate only if it is a "certainty" that the defendant is liable).

For purposes of considering Rule 12(c) motions, all well-pleaded allegations contained in the nonmoving party's pleadings are to be taken as true. *Gillman v. Burlington Northern Railroad Co.,* 878 F.2d 1020, 1022 (7th Cir.1989); *Republic Steel Corp. v. Pennsylvania Engineering Corp.,* 785 F.2d 174, 177 n. 2 (7th Cir.1986); *National Union Fire Ins. Co. v. Continental Illinois Corp.,* 666 F.Supp. 1180, 1183 (N.D.Ill.1987). In ruling on a motion for judgment on the pleadings, the Court must view the facts in pleadings and all inferences drawn therefrom in the light most favorable to the nonmovant. *Flenner v. Sheahan,* 107 F.3d 459, 461 (7th Cir.1997); *Republic Steel,* 785 F.2d at 177

n. 2; *National Fidelity,* 811 F.2d at 358. Courts are not bound, however, by the legal characterizations contained in the pleadings. *Republic Steel,* 785 F.2d at 177 n. 2, 182–83; *National Fidelity,* 811 F.2d at 358. When a written instrument incorporated in the pleadings contradicts allegations in the complaint, the exhibit "trumps the allegations." *Northern Indiana Gun,* 163 F.3d at 454. The motion may be granted only if it then appears that under no set of circumstances can the plaintiff be granted relief. *Frey v. Bank One,* 91 F.3d 45, 46 (7th Cir.1996), *cert. denied,* 519 U.S. 1113, 117 S.Ct. 954, 136 L.Ed.2d 841 (1997).

Under the second sentence of Rule 12(c), the Court may, if it chooses, consider matters outside the pleadings as if the motion were one for summary judgment. This alternative use of the Rule, however, provides that the motion cannot be granted if a genuine issue of material fact is presented under the summary judgment standards employed under Rule 56 and its bankruptcy analogue, Bankruptcy Rule 7056.

**B. The Standard for Summary Judgment**

In order to prevail on a motion for summary judgment, the movant must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56 provides in pertinent part:

> [T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Trautvetter v. Quick,* 916 F.2d 1140,

1147 (7th Cir.1990); *Farries v. Stana-dyne/Chicago Div.*, 832 F.2d 374, 378 (7th Cir.1987) (quoting *Wainwright Bank & Trust Co. v. Railroadmens Federal Sav. & Loan Ass'n of Indianapolis*, 806 F.2d 146, 149 (7th Cir.1986)).

In 1986, the United States Supreme Court decided a trilogy of cases which encourage the use of summary judgment as a means to dispose of factually unsupported claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Matsushita*, 475 U.S. at 585–86, 106 S.Ct. 1348; *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

All reasonable inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *Peerman v. Georgia–Pacific Corp.*, 35 F.3d 284, 286 (7th Cir. 1994); *Cuddington v. Northern Ind. Public Serv. Co.*, 33 F.3d 813, 815 (7th Cir. 1994). The existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under applicable law. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Frey v. Fraser Yachts*, 29 F.3d 1153, 1156 (7th Cir.1994). "Summary judgment is not an appropriate occasion for weighing the evidence; rather the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir.1990). However, "[i]f evidence opposing summary judgment is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted); see also *Griffin v. Air Line Pilots Ass'n, Int'l*, 32 F.3d 1079, 1084 (7th Cir.1994).

When the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial and summary judgment must be granted. *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

Both parties have complied with Local Bankruptcy Rules 402(M) and 402(N) and filed the requisite statements under those Rules.

## IV. DISCUSSION

### A. The Debtor's Motion for Judgment on the Pleadings

■ As a threshold issue, the Court must decide whether it appropriately may consider the Settlement Agreement in deciding Fultz's Motion for Judgment on the Pleadings. A motion for judgment on the pleadings is essentially a request that the Court consider the facts alleged in the complaint and answer, together with any exhibits attached thereto, and determine from those items alone whether the movant is entitled to judgment as a matter of law.

Fultz's Motion and Federal Sign's defense are both based upon the terms of the Settlement Agreement, but neither Fultz nor Federal Sign attached a copy of the Settlement Agreement to any of the pleadings. *See Ed Miniat, Inc. v. Globe Life Insurance Group, Inc.*, 805 F.2d 732, 739 n. 12 (7th Cir.1986) (writing that where the plaintiffs failed to attach a copy of a document to their complaint, the document did not become part of the pleadings). The pleadings before the Court consist of: (1) Federal Sign's Complaint; (2) the Appellate Court opinion attached to the Complaint as Exhibit A; (3) the Letter Agreement, Note, and Addendum attached to the Complaint as Group Exhibit B; (4) Fultz's Answer with no exhibits or attachments; (5) Fultz's Affirmative Defense to Complaint with no exhibits or attachments; and (6) Federal Sign's Response with no exhibits or attachments.

However, a copy of the Settlement Agreement is attached to Fultz's Motion for Judgment on the Pleadings, which by the very language of Rule 12(c) cannot be filed until after the pleadings have closed. Fed.R.Civ.P. 12(c). Federal Sign has not disputed the authenticity or content of the copy supplied with the pending motion.

■ Although Federal Sign has not asked the Court to exclude the Settlement Agreement, which the Court first received together with the Motion for Judgment on the Pleadings, the Court must nevertheless consider whether the Settlement Agreement is a "matter outside the pleadings" for purposes of Rule 12(c). The language of Rule 12(c) is mandatory: if the Court does not exclude matters outside the pleadings, then it must treat the motion as a motion for summary judgment. Fed. R.Civ.P. 12(c). Thus, when the parties submit documents outside the pleadings, the Court either must exclude the documents or convert the motion for judgment on the pleadings to a motion for summary judgment. As a general rule, the pleadings include the complaint, the answer, and any written instruments attached as exhibits. *Northern Indiana Gun,* 163 F.3d at 452.

However, logic extends the short list of documents the Court may consider to include the motion itself and the response in opposition thereto. After all, the Court must be able to consider the motion and the arguments therein before deciding whether or not to grant the relief requested. For that matter, the Court cannot know what relief the movant has requested unless it first reads and considers the motion itself. The question before the Court is not whether it may consider the motion itself, as clearly it may. The question is rather whether it may consider a document first filed as an exhibit to a motion for judgment on the pleadings, when any paper so filed has *per se* been filed after the pleadings have closed. Fed.R.Civ.P. 12(c).

■ At first glance, it seems that the Court must either exclude the Settlement Agreement or convert Fultz's Motion for Judgment on the Pleadings to a motion for summary judgment. Nevertheless, the Court concludes that it may properly consider the Settlement Agreement for purposes of Fultz's Motion for Judgment on the Pleadings for the following reasons. First, while neither party submitted a copy of the Settlement Agreement as an exhibit to the pleadings, it would be wholly illogical if the Court could not consider a document to which the parties repeatedly refer in the pleadings and which is central to both the Plaintiff's claim and the Debtor's defense.

■ Second, a motion for judgment on the pleadings under Rule 12(c) is subject to the same standards as a motion to dismiss under Rule 12(b). *Craigs, Inc. v. General Electric Capital Corp.,* 12 F.3d 686, 688 (7th Cir.1993); *Thomason v. Nachtrieb,* 888 F.2d 1202, 1204 (7th Cir.1989); *Envirodyne,* 183 B.R. at 817. Documents that a defendant attaches to a Rule 12(b) motion to dismiss are considered to be part of the pleadings if the plaintiff referred to them in its complaint and the documents are central to the plaintiff's claim. *Menominee Indian Tribe of Wisconsin v. Thompson,* 161 F.3d 449, 456 (7th Cir.1998); *Venture Assocs. Corp. v. Zenith Data Systems,* 987 F.2d 429, 431 (7th Cir.1993); *see also, Wright v. Associated Ins. Cos., Inc.,* 29 F.3d 1244, 1248 (7th Cir.1994) (holding that the district court properly considered an agreement attached only to the motion to dismiss where the plaintiff referred to and quoted from the agreement in its complaint). So also it is logical and proper for the Court to consider the copy of the Settlement Agreement attached to Fultz's motion. It is functionally and practically impossible to decide a dispute which centers on a particular paper without considering the paper itself.

As the standards for motions under Rule 12(c) are the same as those under Rule

12(b), the Court will apply the foregoing rule and determine that the copy of the Settlement Agreement attached to the Motion for Judgment on the Pleadings is properly part of the pleadings and that the Court should consider it. Federal Sign refers to the Settlement Agreement in four paragraphs of its Complaint. (Complaint ¶¶ 24–27). Federal Sign does not quote from the Settlement Agreement, but it free-handedly paraphrases and interprets it as containing only a conditional release. Further, Fultz's default under the terms of the Settlement Agreement is central both to Federal Sign's claim and its defense to the pending motion. (Complaint ¶¶ 26–27). Under these circumstances, the Court holds that it may properly consider the Settlement Agreement for purposes of the Motion for Judgment on the Pleadings.

*B. Standards for Dischargeability in the Seventh Circuit*

■ The party seeking to establish an exception to the discharge of a debt bears the burden of proof. *Selfreliance Fed. Credit Union v. Harasymiw (In re Harasymiw)*, 895 F.2d 1170, 1172 (7th Cir.1990); *Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 961 (Bankr.N.D.Ill.1995). The United States Supreme Court has held that the burden of proof required to establish an exception to discharge is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re McFarland*, 84 F.3d 943, 946 (7th Cir.1996), cert. denied, 519 U.S. 931, 117 S.Ct. 302, 136 L.Ed.2d 220 (1996); *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir.1994). To further the policy of providing a debtor a fresh start in bankruptcy, "exceptions to discharge are to be construed strictly against a creditor and liberally in favor of a debtor." *Goldberg Secs., Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir. 1992) (quoting *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir.1985)). *Accord In re Reines*, 142 F.3d 970, 972–73 (7th Cir. 1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 797, 142 L.Ed.2d 659 (1999).

*C. Section 523(a)(2)(A)*

■ Section 523 of the Bankruptcy Code enumerates specific, limited exceptions to the dischargeability of debts. Section 523(a)(2)(A) provides:

> (a) A discharge under section 727 ... does not discharge an individual debtor from any debt-
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A). To prevail on a complaint to determine dischargeability under § 523(a)(2)(A), a plaintiff must establish three elements. First, the plaintiff must show that the debtor obtained money, property, services, or an extension, renewal or refinancing of credit from it by making representations which the debtor either knew to be false or made with such reckless disregard for the truth as to constitute willful misrepresentation. *Scarlata*, 979 F.2d at 525; *see also, Mayer v. Spanel International, Ltd.*, 51 F.3d 670, 673–74 (7th Cir.1994) (discussing the elements of a claim under § 523(a)(2)(A)). The plaintiff must also show that the debtor acted with an intent to deceive. *Scarlata*, 979 F.2d at 525. Finally, the plaintiff must show that it justifiably relied on the debtor's false statements. *Field v. Mans*, 516 U.S. 59, 74–75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995).

■ In the Seventh Circuit, a debt that otherwise would have been nondischargeable becomes fully dischargeable when an instrument, such as a note, release, or waiver, substitutes a contractual obligation for the obligation arising from tortious acts. *In re West*, 22 F.3d 775, 777 (7th Cir.1994); *see also, Shaw Steel v. Morris (In re Morris)*, 230 B.R. 352, (Bankr. N.D.Ill.1999) (concluding that the court

need not address the issue of whether the debtor originally obtained credit by fraud where the parties executed a settlement agreement that expressly released the debtor from the fraud claim). In *West*, the debtor embezzled more than $100,000 from her employer. Subsequently, she gave the employer a promissory note in exchange for a general release. When the debtor attempted to discharge the debt in bankruptcy, the employer argued that the debt was nondischargeable because it was founded on embezzlement. The Seventh Circuit held that the debt was dischargeable. because the general release substituted a contract debt for the debt in tort. *West*, 22 F.3d at 778. The court decided to enforce the note rather than the tort, *Id.*, reasoning that its approach would encourage and enforce settlements. *Id.* Further, the approach is equitable because in settlement agreements the creditor itself, and not the debtor, discharges the debtor's original obligation. *Id.*

Fultz's debt to Federal Sign, created by the Settlement Agreement and thereby owed, is dischargeable in bankruptcy. The Court has carefully reviewed the Settlement Agreement and concludes that the general release language in Paragraphs 10 and 11 quoted above granted a present release of each party's claims against the other, similar to the situation in *West*. That Federal Sign, under Paragraph 8 of the Settlement Agreement, could pursue Fultz for the full unpaid balance of the judgment against him upon his default did not transform the general release into a conditional one. The Ninth Circuit has also adopted this approach. It held that a "Compromise Agreement and Mutual Release" extinguishing claims arising out of the original transaction between the parties clearly created a novation. *Key Bar Investments, Inc. v. Fischer (In re Fischer)*, 116 F.3d 388, 390–91 (9th Cir.1997), *amended by* 127 F.3d 819 (9th Cir.1997). Thus, the debt at issue in the bankruptcy proceedings was not the original, nondischargeable debt for fraud, but a fully dis-

chargeable debt created by the contract. *Id.*

The Bankruptcy Court for the Eastern District of New York has recently decided a similar case under § 523(a)(2)(A). The parties settled a fraud action against the debtor. The debtor defaulted on the settlement terms. The creditor brought an action seeking to enforce the settlement agreement and the debtor then filed bankruptcy. The creditor filed a complaint to determine dischargeability. The court held:

> A settlement in which both parties are represented by competent counsel, and which is approved by a court of competent jurisdiction, should render [allegations of fraud] entirely moot-not because the defendant is or is not a bad man, but because the parties have mutually agreed that issue will not be litigated. There is absolutely nothing about federal bankruptcy law that should disturb that outcome.

*Giaimo v. Detrano (In re Detrano)*, 222 B.R. 685, 688 (Bankr.S.D.N.Y.1998).

Courts in other jurisdictions have arrived at different conclusions on this issue. In a case under § 523(a)(4), the Eleventh Circuit held that "a debt which originates from the debtor's fraud should not be discharged simply because the debtor entered into a settlement agreement." *Greenberg v. Schools*, 711 F.2d 152, 156 (11th Cir. 1983). In a § 523(a)(2)(A) context, the D.C. Circuit chose to follow *Greenberg* rather than *West*, noting that such an approach effectuates Congressional policy by denying the debtor a fresh start at the expense of third parties. *U.S. v. Spicer*, 57 F.3d 1152, 1156 (D.C.Cir.1995). The Bankruptcy Appellate Panel of the Sixth Circuit has recently joined the ranks of those holding that, for bankruptcy purposes, a novation does not extinguish the underlying fraud or debt. *Ed Schory & Sons, Inc. v. Francis (In re Francis)*, 226 B.R. 385, 389–391 (6th Cir. BAP 1998).

However, *West* is controlling in this Court, as throughout the Seventh Circuit,

and this Court will follow it. Therefore, if the Settlement Agreement between Fultz and Federal Sign created a novation, substituting a contract debt for a debt arising from tort, then the debt is dischargeable in bankruptcy.

■■■■ A novation is a matter of state law. *See, e.g., In re Grabinski,* 150 B.R. 427, 432 (Bankr.N.D.Ill.1993) (listing the elements of a novation under state law). The elements of novation are: (1) a previous valid obligation; (2) a subsequent agreement by all of the parties to the new contract; (3) the validity of the new contract; and (4) the extinguishment of the old obligation. *Aluminum Co. of America v. Home Can Mfg. Corp.,* 134 Ill.App.3d 676, 682, 480 N.E.2d 1243, 89 Ill.Dec. 500 (1985), citing *Greenbaum & Browne, Ltd. v. Braun,* 88 Ill.App.3d 210, 213, 410 N.E.2d 303, 43 Ill.Dec. 303 (1980). The intention of the parties to extinguish a debt is not presumed. The party asserting novation has the burden of proving novation by a preponderance of the evidence. *Greenbaum & Browne,* 88 Ill. App.3d at 213, 43 Ill.Dec. 303, 410 N.E.2d 303; *Faith v. Martoccio,* 21 Ill.App.3d 999, 1004, 316 N.E.2d 164 (1974).

Did the Settlement Agreement wherein Fultz and Federal Sign granted each other general releases create a novation? The answer is yes because all four elements are present: (1) Federal Sign had a favorable judgment entered by the state courts against Fultz; (2) both Fultz and Federal Sign agreed to the terms of the Settlement Agreement; (3) the validity of the Settlement Agreement is undisputed; and (4) by its terms each party released all its prior claims against the other. Thus, the parties extinguished their old obligations in the Settlement Agreement.

■■■■ A release is a contract for "the abandonment of a claim to the person against whom the claim exists." *Simmons v. Blauw,* 263 Ill.App.3d 829, 832, 635 N.E.2d 601, 603, 200 Ill.Dec. 262, 264 (1994). State law determines the rules of contract interpretation. *North Shore Gas Co. v. Salomon,* 152 F.3d 642, 652 (7th Cir.1998). A court must look at the language of a contract to determine whether the contract is ambiguous as a matter of law. *Quake Construction, Inc. v. American Airlines, Inc.,* 141 Ill.2d 281, 288, 565 N.E.2d 990, 994, 152 Ill.Dec. 308, 312 (Ill. 1990). A contract is ambiguous if it is "reasonably susceptible to more than one meaning." *Sheehy v. Sheehy,* 299 Ill. App.3d 996, 1000, 702 N.E.2d 200, 204, 234 Ill.Dec. 34, 38 (1998). However, "[w]here a written agreement is clear and explicit, a court must enforce the agreement as written." *Simmons,* 263 Ill.App.3d at 832, 200 Ill.Dec. 262, 635 N.E.2d 601. Contracts must be construed as whole; courts must not reject contractual language as meaningless. *Sheehy,* 299 Ill.App.3d at 1000–01, 234 Ill.Dec. 34, 702 N.E.2d 200. Courts will not add language to a contract, nor add words or terms to an agreement to change the plain meaning of the agreement. *Id.* at 1001, 234 Ill.Dec. 34, 702 N.E.2d 200.

Fultz argues that, by the plain meaning of the language of Paragraph 10, Federal Sign released him from the original fraud claim. Federal Sign argues that "[t]he only way that the release can be interpreted, without rendering Paragraph 8 meaningless, is to find that the release is conditional." (Plaintiff's Response to Debtor's Motion for Judgment on the Pleadings p. 4). It argues that Paragraph 8 would be rendered meaningless by any construction of the Settlement Agreement other than the one it urges on the Court.

The Court disagrees. By its plain language, Paragraph 8 is nothing more or less than a liquidated damages provision. It sets forth the greater amount of money that Fultz would have to pay if he failed to fulfill the terms of the Settlement Agreement. It also establishes the rate of interest that would apply to the liquidated damages in the event of a default under the Settlement Agreement. There is nothing in Paragraph 8 which conditions the gener-

al release afforded the parties by Paragraphs 10 and 11. The Court finds no ambiguity in the text of the Settlement Agreement.

The maximum principal amount that Fultz would have paid if he fulfilled his obligations under the terms of the Settlement Agreement was $35,500. Ten thousand dollars of that amount might never come due.[2] Prior to execution of the Settlement Agreement, Federal Sign sought to enforce its judgment and to further collect $56,945 in fees and costs alone. (Complaint ¶ 23). The terms of the Settlement Agreement presented Fultz with a significant reduction in the amount he would have to pay Federal Sign.

In spite of numerous references to Paragraph 8 made by Federal Sign in the record, Federal Sign has never quoted Paragraph 8. Rather, Federal Sign repeatedly offers its interpretations and paraphrasing of the language. In its response brief, Federal Sign tells the Court that "the Settlement Agreement expressly states that, upon a default, Federal was entitled to the *original* judgment ... there was no unconditional substitution of the original debt for some new obligation. Rather the agreement provided that the original debt would be in full force and effect upon a default." (Plaintiff's Response to Debtor's Motion for Judgment on the Pleadings p. 3) (emphasis in original). What the relevant sentence in Paragraph 8 actually says, sandwiched between two provisions for interest charges, is that "[i]n the event of a Default, the entire *amount* of Federal's judgment ... plus reasonable attorney's fees ... less all payments made pursuant to this Settlement Agreement, shall be immediately due." (Debtor's Motion for Judgment on the Pleadings Exhibit A ¶ 8) (emphasis added). Nowhere does the Settlement Agreement

"expressly state" that Federal Sign would be entitled to the "original judgment," despite Federal Sign's creative argument thereabout, which the Court rejects.

Paragraph 8 says nothing about conditions to the release. To construe it as imposing conditions on the release would be to add both language and terms to the contract between the parties, which was obviously intended to resolve their disputed tort claims against each other. What is more, to construe Paragraph 8 as Federal Sign suggests would require the Court to ignore the word "amount." Paragraph 8 does not set conditions on the release. Rather, Paragraph 8 sets forth the increased amount of money that Fultz would owe if he defaulted on the settlement terms, which substantially discounted the principal amount he had been held liable for under the prior state court judgment.

■ The *Detrano* court set out the one reliable way to ensure that a debt for fraud does not become dischargeable in bankruptcy after the parties settle the claim. First, in the settlement agreement, the debtor must admit to the specific allegations of the intentional tort. *Detrano*, 222 B.R. at 689. Second, the debtor has to acknowledge that any release of liability is conditional, and not absolute. *Id.* The Settlement Agreement at issue here simply does not meet these criteria, nor does Fultz concede that the Settlement Agreement is in any way conditional.

■ By its own language, Paragraph 10 of the Settlement Agreement, on which Fultz relies, is a general release which became effective when the parties executed the contract. Nowhere in Paragraph 10 or elsewhere in the contract does any language appear acknowledging that the release of the fraud claim is conditional and not absolute.[3] The closing sentence of

---

**2.** The Settlement Agreement made provision in Paragraphs 6(c) and 6(d) for funds that Fultz might have had in Federal Sign retirement programs or employee stock purchase programs.

**3.** Although neither party raised the issue, the Court considered whether Paragraph 7, stating that Federal Sign would give Fultz a Satisfaction of Judgment after he completed the payments indicated an intention by the par-

Paragraph 10 says that Federal Sign understands that the release is a general release. (Debtor's Motion for Judgment on the Pleadings Exhibit A ¶ 10).

■ The Settlement Agreement clearly and plainly releases Fultz from the original claim for fraud. Thus, the Settlement Agreement substituted a contract debt for the debt for fraud. Federal Sign makes no allegations that Fultz obtained the Settlement Agreement by fraud. *See, e.g. Morris*, 230 B.R. 352 (finding that the debtor obtained a release by fraud where the debtor submitted an affidavit of financial condition containing material misrepresentations about his income, but nevertheless concluding that the debt was dischargeable because the creditor did not reasonably rely on the false statements as required by § 523(a)(2)(B)).

Here, all the elements of novation are present. Federal Sign's judgment against Fultz was a previous valid obligation. The parties subsequently agreed to the Settlement Agreement. Neither party disputes the validity of the Settlement Agreement, nor has Federal Sign alleged that it was obtained by fraud committed by Fultz. Paragraphs 10 and 11 of the Settlement Agreement provide for the simultaneous release of each party's claims against the other. Under the *West* rationale, which the Court finds controlling and persuasive, the contractual debt now owing from Fultz to Federal Sign under the Settlement Agreement is fully dischargeable in bankruptcy.

### D. The Plaintiff's Motion for Summary Judgment

The doctrine of collateral estoppel is not applicable to bar Fultz's defense to the issue of whether he may discharge his present debt to Federal Sign in bankruptcy.

■ Federal Sign's judgment against Fultz was a state court judgment. The Court will apply the collateral estoppel standard of Illinois, the state in which Federal Sign obtained the judgment. *See, Union National Bank of Marseilles v. Leigh (In re Leigh)*, 165 B.R. 203, 216–17 (Bankr.N.D.Ill.1993) (analyzing the appropriate use of both state and federal collateral estoppel standards under the "full faith and credit" language of 28 U.S.C. § 1738).

■ In Illinois, collateral estoppel is limited to the precise factual or legal issues actually litigated in the prior case. *Id.* at 217. It is further limited to matters actually litigated and determined in the prior suit. *Id.*

■ The matter now before the Court cannot satisfy the requirements of collateral estoppel. The Settlement Agreement did not come into existence until after the Appellate Court opinion and Circuit Court judgment in favor of Federal Sign. Thus, Fultz and Federal Sign did not previously litigate and no court has previously determined the legal terms of the Settlement Agreement and the nature of the contractual debt it created by way of novation. The legal and factual issues before this Court are not the same as those litigated in the prior case.

The Court has found that the Settlement Agreement created a novation and that the debt now owing from Fultz to Federal Sign is a debt for breach of contract and not a debt for fraud. The Settlement Agreement extinguished the old claims and obligation for fraud discussed in the Appellate Court opinion. It substituted a contractual debt for the debt for the tort-

---

ties that the release would be conditional. However, a release discharges a claim one party has against another, while a satisfaction of judgment is a document indicating that a judgment has been paid. In Illinois, a satisfaction of judgment under 735 ILCS 5/12–183 merely serves as proof of payment of the judgment (which is normally filed of record to evidence such fact) and halts the accrual of post-judgment interest. *In re Marriage of Pitulla*, 202 Ill.App.3d 103, 110, 559 N.E.2d 819, 825, 147 Ill.Dec. 479, 485 (1990).

based fraud claim. Neither the fraud debt nor the prior claim exists any longer. Fultz and Federal Sign have never litigated the debt for breach of the terms of the Settlement Agreement. Application of the doctrine of collateral estoppel is inappropriate and Federal Sign's motion for summary judgment should be denied as it is not entitled to that relief as a matter of law.

### IV. CONCLUSION

For the foregoing reasons, the Court hereby grants the Debtor's motion for judgment on the pleadings. The Plaintiff's motion for summary judgment is denied.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.